## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATBCOIN LLC, EDWARD NG, HERBERT W. HOOVER,<br><br>Defendants. | C.A. No. 17-10001<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(a)(1) AND 15(a) OF THE SECURITIES ACT OF 1933**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Raymond Balestra ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this complaint for violations of the federal securities laws the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: documents and solicitation materials released by Defendants, as defined below, in connection with the ATB ICO, as also defined herein, public statements made by Defendants concerning ATBCOIN LLC ("ATB"), and media publications concerning ATB and the ATB ICO. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

### NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action on behalf of himself and all others similarly situated against ATB, Edward Ng ("Ng"), and Herbert W. Hoover ("Hoover," together with Ng, the "Individual Defendants," and collectively with ATB, "Defendants") for their violations of

Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1) & 77o(a) of the Securities Act of 1933 (the "Securities Act").  Specifically, in connection with the ATB initial coin offering ("ICO"), Defendants raised over $20 million in digital cryptocurrencies by offering and selling unregistered securities in direct violation of the Securities Act.

2. Between approximately June 12, 2017 and approximately September 15, 2017, Defendants ran the ATB ICO during which time they received over $20 million in digital currency investments in exchange for "ATB Coins."  Defendants ran multiple "rounds" for the ATB ICO and have not publicly stated precisely how much was raised.  However, websites that analyze ICOs indicate that the ATB ICO raised between $20,400,000 and $24,210,000.[1]  Similarly, Defendants issued press releases touting inconsistent amounts raised.  For example, on June 13, 2017, Defendant ATB issued a press release entitled "ATB Coin Cryptocurrency ICO Now Underway Across the Globe Company Offers Investors a Unique Opportunity."[2]  This press release stated that "[t]he cryptocurrency's capabilities and its future potential has enabled it to raise $12 million within the first fifteen minutes of the ICO" and that Defendant Ng, "expect[ed] the ICO to . . . meet the estimated target amount of $50 million."

3. The purported primary purpose of the ATB ICO was to raise capital to create and launch a new blockchain that would "deliver blazing fast, secure and near-zero cost payments to anyone in the world."[3]  Defendants claimed this network, which was to launch on September 1, 2017, would be "the fastest blockchain-based cryptographic network in the Milky Way galaxy."[4]

---

[1]  *See* https://icobench.com/atb-coin; and https://www.smithandcrown.com/icos/.
[2] *See* https://atbcoin.com/atb-coin-cryptocurrency-ico-now-underway-across-the-globe-company-offers-investors-a-unique-opportunity/.
[3] *See* https://atbcoin.com/docs/ATBCoin_Whitepapper_EN.pdf.
[4] *See* https://cache.sythe.org/hv7T9vtAUFCwGy2nIKnC82h0dHBzOi8vYXRiY29pbi5jb20vQVRCQ29pbmNvbTY0MC5wbmc=.

Defendants actually launched the "ATB Blockchain" on September 14, 2017. It is hardly the "fastest . . . in the Milky Way galaxy." Rather, adoption of ATB Coin and the ATB Blockchain has been essentially nonexistent, and the value of ATB Coins has continuously fallen.[5]

4.     Defendants have made numerous public statements touting the ATB ICO and ATB Coins as investment opportunities. For example, on July 9, 2017, Defendants issued a press release entitled, "PR: Over 5,500 People Choose to Invest in ATB Coin."[6] This press release concluded with: "Only 3 days left before the launch of ATB Coin! Invest in the cryptocurrency of the future, while the project offers the most favorable terms!"

5.     The core offer during the ATB ICO was 1 ATB Coin for $1, payable in Bitcoin ("BTC"), Ether ("ETH"), Litecoin ("LTC"), and potentially other cryptocurrencies. However, there are indications that the offer was modified throughout the ICO. For example, the offer in August 2017 appears to have been 1 ATB Coin for $1.5, payable in BTC, ETH, or LTC.[7] Further, in September 2017, the offer was 1 ATB Coin for $2.5, also payable in BTC, ETH, or LTC.

6.     The ATB ICO was a clear offer and sale of securities because, *inter alia*, Defendants touted, and Plaintiff and other ATB ICO investors reasonably expected, that the ATB Coins received in exchange for their investments would be worth more than the ETH, BTC, LTC, or other currencies invested. Additionally, as discussed herein, Defendants have explicitly referred to the ATB ICO participants as "investors" and repeatedly stressed the profit potential from holding ATB Coins.

---

[5] As of December 13, 2017, one ATB Coin is worth approximately $0.50. Given that each ATB Coin was sold for $1.00 to $2.50 during the ATB ICO, investors like Plaintiff have necessarily lost a substantial amount of their investments.
[6] *See* https://news.bitcoin.com/pr-5500-people-choose-invest-atb-coin/.
[7] *See, e.g.*, https://www.coinstaker.com/initial-coin-offering/atbcoin-ico/.

7. The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. Absent registration, issuers of securities can tout their investment opportunities with no limitations whatsoever. For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines), or peddle its securities using unbounded exaggerations regarding the progress of its products, business plan, and business strategies, or even fabricate the existence of relationships with vendors or other business partners.

8. Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. As detailed herein, the ATB ICO was, and has at all times been, an offer and sale of unregistered securities, and Defendants are therefore strictly liable under Section 12(a)(1) of the Securities Act.

9. Importantly, proof of Defendants' deceptive activity and calculated deprivation of investors' rights and protections under the federal securities laws is not required or determinative as to Plaintiff's claim. This is because Defendants are strictly liable for the offering and selling of unregistered securities in connection with the ATB ICO. Nevertheless, Defendants' deceptive actions are outlined herein to stress the urgency and need for immediate judicial intervention to preserve Plaintiff's and ATB ICO investors' significant financial interests which Defendants currently control, and to rectify existing and future irreparable harm to Plaintiff and ATB ICO investors. For these reasons, Plaintiff on behalf of himself and all similarly situated ATB ICO investors, seeks compensatory, injunctive, and rescissory relief, which would provide rescission

and repayment of all investments into the ATB ICO, as well as secure and conserve such funds until repayment.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act (15 U.S.C. § 77v) because Plaintiff alleges violations of Sections 12(a)(1) and 15(a) of the Securities Act.

11. The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) Defendant ATB is headquartered in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money by doing business here and engaging in activities having an effect in this District.

## PARTIES

13. Plaintiff invested in the ATB ICO on August 21, 2017, by transmitting 2.1 ETH to Defendants.

14. Defendant ATB is a Delaware corporation founded on June 12, 2017 which maintains its principal place of business at 64 Fulton Street, Suite 603, New York, NY 10038-

2753.  Defendant ATB also lists its address as 40 Wall Street, 28th Floor.  However, this address is well known to host "virtual offices" for as low as "$69.00" per month.[8]

15. Defendant Ng is a co-founder of Defendant ATB and is Defendant ATB's chief executive officer ("CEO").  Defendant Ng is also the CEO of 1WorldBlockChain, which is currently conducting its own ICO.[9]  According to Defendant ATB's Limited Liability Company Agreement, Defendant Ng made or was expected to make a capital contribution of $5,000,000 into Defendant ATB.

16. Defendant Hoover is a co-founder of Defendant ATB.  Defendants have claimed that Defendant Hoover is both a descendent of President Herbert Clark Hoover and a descendent of the Hoover family that founded the Hoover Company.[10]  These claims are impossible as these two family trees are unrelated.  Moreover, as is evident in a video of Defendant Hoover clearly reading his own "biography" with an accent, it appears highly unlikely that Defendant Hoover is who he claims to be.[11]  According to Defendant ATB's Limited Liability Company Agreement, Defendant Hoover made or was expected to make a capital contribution of $5,000,000 into Defendant ATB.

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action individually and as a class action on behalf of all investors in the ATB ICO who are being, and will be, harmed by Defendants' actions described herein (the "Class"), absent judicial intervention.  Excluded from the Class are Defendants herein

---

[8] *See* https://www.davincivirtual.com/loc/us/new-york-city-virtual-offices/facility-677.
[9] *See* https://coin.1worldblockchain.com/en/invest.
[10] *See* https://bitcointalk.org/index.php?topic=1989756.300; and https://www.youtube.com/watch?v=T_4hzarFigg.
[11] *Id*.

6

and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with any Defendant, including the immediate family members of the Individual Defendants.

18. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

19. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class. All members of the Class may be identified by records maintained by Defendants and notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

20. There are questions of law and fact which are common to the Class and predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants offered and sold unregistered securities to the Class during the ATB ICO; (ii) whether Plaintiff and other Class members will suffer irreparable harm if such securities laws violations are not remedied; and (iii) whether the Class is entitled to injunctive, compensatory, and/or rescissory relief as a result of Defendants' wrongful conduct as alleged herein.

21. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have all sustained harm in a substantially identical manner as a result of Defendants' wrongful conduct as alleged herein.

22. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

23. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

24. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

25. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

26. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury they will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

*Background on ATB and the ATB ICO*

27. Defendants have released multiple iterations of a "Whitepaper" regarding the ATB ICO. Defendants released "Revision 1" of the "Whitepaper" on June 8, 2017. Additionally, Defendants released "Revision 1.6" of the "Whitepaper" on August 7, 2017 (hereinafter "Whitepaper Revision 1.6"). According to Whitepaper Revision 1.6, the ATB Coin "supports an unlimited number of transactions between different devices at high speed with its Lightning Network technology" and ATB had "already signed contracts with some big players around the world . . . ."

28. The ATB ICO "officially" launched on June 12, 2017. That same day, Defendants issued a press release regarding the ATB ICO in which they proclaimed that "[n]ow every investor has the opportunity to become apart [sic] of the world technological evolution!"[12]

29. On August 15, 2017, Defendants issued a press release announcing a "second phase" to the ATB ICO in which they stated they were "pleased to announce that the interest in the ATB Coin project continues to grow both from potential investors and prospective partners . . . ."[13] The "second phase" was scheduled to run until August 30, 2017.

30. However, even after the "second phase" of the ATB ICO had supposedly "ended," Defendants issued a press release on September 11, 2017, which stated:

> Good news for those who haven't managed to invest during the ICO: you have the second and last chance! ATB Coin team decided to accept investments until the working network is launched. The token price after September, [sic] 1 has raised to $2.5, but a 10% discount has been saved [sic] for all new investors.[14]

31. Ultimately, Defendants operated the ATB ICO from approximately June 12, 2017 through approximately September 15, 2017.

*Marketing the ATB ICO*

32. On June 6, 2017, Defendants issued a press release announcing the ATB ICO in which they asserted that "[u]nlike others, ATB Coin is not shrouded in mystery and crypto-complexity! They are in-the-flesh company executives and technical staffers here in New York ready to answer any and all questions."[15]

---

[12] Defendants have a tendency to refer to themselves from a third person point of view in many of their press releases. *See* https://atbcoin.com/atb-coin-launches-ico-on-june-12/.
[13] *See* https://cointelegraph.com/press-releases/2nd-stage-of-atb-coin-ico-invest-in-cryptocurrency-of-the-future.
[14] *See* www.newsbtc.com/2017/09/11/atb-coin-investment-continues/.
[15] *See* http://www.prweb.com/releases/2017/06/prweb14400783.htm.

33. Over the following months, Defendants released numerous promotional materials relating to the ATB ICO touting it as an investment opportunity. For example, on July 9, 2017, Defendants issued a press release entitled "Why You Should Invest in Tokens Issued on ICO."[16]

34. Moreover, even after the ATB ICO had "ended," Defendants continued to solicit investments. For example, the press release Defendants issued on September 11, 2017[17] included the following graphic:



35. Accordingly, it is indisputable that Defendants were offering and selling investments. Indeed, Defendant ATB's current website contains an FAQ Section with the question "How can I make profit using ATB Coin?" The provided response is: "ATB Coin balanced marketing plan allows each user and investor to maximize their capital, effectively using their business skills."

---

[16] *See* https://atbcoin.com/tokens-ico-investing/
[17] *Supra* note 14.

10

36. In short, as stated in a review of the ATB ICO on verifiedicos.com:

[T]he creators of this coin offer nothing of substance to the crypto-community. Cheap marketing tactics designed to fool the average investor should be ignored. This video seen here shows the co-founder of the company discussing his business through a fake interview, we can clearly see this fellow is reading a script.

Archive.org also shows a historical snapshot of the website advertising their $2 Million R&D investment which has yielded nothing but a cheap reskinned BTC wallet which is still in beta. The ATB Coin Wallet software is not code signed, the Windows executable was created by an unknown publisher. No indication of development on a public blockchain testnet is available even though it was previously promised on their road map.[18]

*ATB Coins Are Securities*

37. It is indisputable that Defendants participated in the offer and sale of ATB Coins. Specifically, Defendants were offering ATB Coins for BTC, ETH, and LTC. As Defendants stated in the Revision 1.6 Whitepaper, "[d]uring the ICO anyone will be able to purchase ATB Coin tokens and receive a certain number of ATB Coins as a bonus." The offer terms varied throughout the ATB ICO. On September 11, 2017, Defendants explained the offer as "[t]he token price . . . has raised to $2.5, but a 10% discount has been saved [sic] for all new investors."[19]

38. When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction. Here, the economic realities are that Plaintiff and the Class invested ETH, BTC, and LTC in order to receive ATB Coins, which they were conditioned to expect would be worth more than their ETH, BTC, and LTC investment. Indeed, Defendants touted the potential profit to be made from investing in the ATB ICO on numerous instances. For example, Defendants' July 9, 2017 press release claimed that "ATB investors are serious people from many prosperous countries, they are interested in the development of the

---

[18] *See* https://www.verifiedicos.com/ico/atb-coin.

[19] *Supra* note 14.

11

company, the growth of the rate and, of course, the profit, which as is known, will soon come to those who are 100% sure of the possibilities of cryptocurrency."[20]  Similarly, Defendants' September 11, 2017 press release concluded with an exhortation to "[g]rab the chance to invest in a very prospective project and change your life by filling it with new financial opportunities!"[21]

39. Similarly, Defendant ATB's current website describes the project as follows:

> As in any other financial / economic system, the first users of ATB Coin cryptocurrency can be compared to investors in a start-up, which can later acquire value, due to its usefulness and popularity.  Thus, the acquisition of the first ATB Coin becomes a kind of investment with a long-term perspective.[22]

40. Moreover, updates Defendants have provided to participants in the ATB ICO since the ICO "ended" begin with "Dear Investors!"  For example, on September 20, 2017, Defendants issued an update which read: "Dear Investors! . . . it's just the beginning! ATB Coin plans to expand . . . offering its investors more opportunities to multiply their investments and use ATB Coin in everyday life."[23]

***ATB Coins Constitute "Investment Contracts"***

41. Plaintiff's and the Class' investments of ETH, BTC, and LTC constitute an investment of money in an investment contract.

42. Plaintiff and the Class were investing in a common enterprise with Defendants, as the ATB ICO investments were pooled under the control of Defendant ATB, and the success of the ATB Blockchain—and thus potential profits stemming from the future valuation of the ATB Coins—was entirely reliant on Defendants' actions.  As a practical matter, the value of ATB Coins

---

[20] *Supra* note 16.
[21] *Supra* note 14.
[22] *See* https://atbcoin.com/f-a-q-en/.
[23] *See* https://atbcoin.com/localtrade-pro-exchange-provides-trading-in-atb-btc-atb-usd-currency-pairs/.

was expected to rise from the speed of transactions on the ATB Blockchain that was promoted as "the fastest blockchain-based cryptographic network in the Milky Way galaxy."[24]  This speed was expected to permit instant transactions in cryptocurrencies and thus lead to mass adoption.  Given that the ATB Blockchain is not capable of such feats and has generally not been adopted or successful, ATB Coins have minimal value.

43.     In short, it is obvious that any success from creating the ATB Coins or ATB Blockchain, as well as any future potential increases to the value of ATB Coin was, and continues to be, entirely dependent on Defendants' actions.

*Attempted Exclusion of U.S. Investors*

44.     On July 25, 2017, the SEC issued a report on "The DAO," which offered tokens for sale online, in which the SEC advised those using "distributed ledger or blockchain-enabled means for capital raising, to take appropriate steps to ensure compliance" with the federal securities laws, and stated that "[a]ll securities offered and sold in the United States must be registered with the Commission . . ." or qualify for an exemption from registration.  On the same day, the SEC issued an investor bulletin urging caution when investing in ICOs and instructing investors to be mindful that promoters that lead buyers of tokens to expect a return on their investment, or shared returns provided by the project, may be offering a security for sale.

45.     Sometime in September 2017, Defendants decided they would "exclude" U.S. investors from the ATB ICO by including a box that investors had to check stating that they were not a "United States citizen or resident" prior to purchasing ATB Coins.  Such actions were clearly an attempt to circumvent the federal securities laws.

---

[24] *Supra* note 4.

46.     Despite such attempts it is obvious that the ATB ICO was marketed towards U.S. investors.  For example, on June 29, 2017, Defendants issued a press release stating that "[a]ccording to CEO Edward Ng, the company's technologically revolutionary cryptocurrency has already attracted excited investors from the United States, Canada, and China. Edward also stated that the company is pleased with the current high level of interest and optimism from investors."[25]

47.     Accordingly, despite Defendants' charade that they excluded U.S. investors from purchasing ATB Coins, it is obvious that U.S. investors were directly targeted as potential investors.

48.     In September 2017, China announced that it had banned ICOs in its country. Defendants thereafter provided refunds to Chinese investors who purchased ATB Coins.  On September 15, 2017, when questioned as to why all investors were not refunded, the official "ATB Coin" account on bitcointalk.org responded as follows:



---

[25] *See* https://bitcoinprbuzz.com/press-release-atb-coin-ico/.

49.     Apparently, Defendants believed that because their activities were governed by "USA laws," investors were not entitled to a refund of their investments.  Defendants were grossly mistaken, as the federal securities laws were designed to protect investors in precisely these situations and entitle them to rescission and/or compensatory damages.

50.     On September 29, 2017, the SEC announced that they charged two companies with defrauding investors in connection with "so-called" ICOs that were purportedly backed by investments.

51.     On November 8, 2017, Jay Clayton, the newly appointed Chairman of the SEC, delivered a speech to the 49th Annual Institute on Securities Regulation in which he equated ICOs with securities.  After this speech, the Wall Street Journal reported Chairman Clayton as stating "I have yet to see an ICO that doesn't have a sufficient number of hallmarks of a security."  This statement sums up the core issue here quite succinctly.  The fact of the matter is, digital currencies are a relatively new technology and various parties are taking advantage of the time it takes for regulatory agencies to address developments in the area to engage in unlawful conduct with near impunity – *e.g.*, Defendants have here raised millions of dollars by promising the fastest blockchain "in the Milky Way galaxy" without registering their offerings.

52.     On December 1, 2017, the SEC filed a complaint against PlexCorps for selling unregistered securities in connection with the "PlexCoin Token" ICO.  Similarly, on December 11, 2017, the SEC announced that it had shut down Munchee Inc., a California-based online food review company, which had been planning on conducting an ICO.  It is clear from recent events that the rampant disregard of federal securities laws and, consequently, abuse of investors taking place in the ICO space has been noted by regulatory agencies, including the SEC.  However, federal regulators cannot be everywhere at once, and have not yet taken action with regard to

ATB's offering and sale of ATB Coins. Fortunately, the private right of action provided for by Section 12(a)(1) of the Securities Act was created for just this type of situation and provides strict liability for the sale of unregistered securities.

## CLAIMS FOR RELIEF

### COUNT I
### CLAIM FOR VIOLATION OF SECTION 12(A) OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

53. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

54. Section 12(a)(1) grants Plaintiff a private right of action against any person who offers or sells a security in violation of Section 5, and states that such person:

> Shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

55. From approximately June 12, 2017 through approximately September 15, 2017, in connection with the ATB ICO, Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or the mails for the purposes of offering, selling, or delivering unregistered securities in direct violation of Sections 5(a) and 5(c) of the Securities Act.

56. The ATB ICO and sale of ATB Coins were the sale of unregistered securities under controlling federal law. ATB Coins exhibit the following particular hallmarks of a security under the *Howey* test: (a) in order to receive any ATB Coins, an investment of money in the form of ETH, BTC, and/or LTC was required; (b) the investment of money was made into the common enterprise that is ATB and the potential future ATB Blockchain; (c) the success of the investment

and any potential returns on such were entirely reliant on Defendants' ability to create the promised ATB Blockchain.

57. As such, Defendants have participated in an unregistered sale of securities in violation of the Securities Act, and are liable to Plaintiff and the class for rescission and/or compensatory damages.

## COUNT II
### Claim for Violation of Section 15(a) of the Securities Act
### Against the Individual Defendants

58. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

59. Due to their ownership interest in and control over Defendant ATB, the Individual Defendants acted as controlling persons of Defendant ATB within the meaning of Section 15(a) of the Securities Act as alleged herein. By virtue of their positions as officers and/or directors and participation in and/or awareness of Defendant ATB's operations, they had the power to influence and control, and did influence and control, directly or indirectly, the decision making relating to the ATB ICO, including the decision to engage in the sale of unregistered securities via the ATB ICO.

60. By virtue of the foregoing, the Individual Defendants are liable to Plaintiff and the Class as control persons of ATB under Section 15(a) of the Securities Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Declaring that Defendants offered and sold unregistered securities in violation of the federal securities laws;

C.	Declaring Defendants are liable to Plaintiff and the Class under Section 12(a)(1) and/or 15(a) of the Securities Act;

D.	Enjoining Defendants from making further transfers or dissipations of the investments raised during the ATB ICO, or using such funds in any further purchases or transactions;

E.	Requiring an accounting of the remaining funds and assets raised from Plaintiff and the Class in connection with the ATB ICO;

F.	Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class;

G.	Ordering rescission of the investments made by Plaintiff and the Class relating to the ATB ICO and/or compensatory damages;

H.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

I.	Granting such other and further relief as this Court may deem just and proper.

*[Continued on Next Page]*

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: December 21, 2017　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**LEVI & KORSINSKY, LLP**

　　　　　　　　　　　　　　　　　　　By:　/s/ *Christopher J. Kupka*

Donald J. Enright　　　　　　　　　　　　　Christopher J. Kupka
Elizabeth K. Tripodi　　　　　　　　　　　　Eduard Korsinsky
John A. Carriel　　　　　　　　　　　　　　30 Broad Street, 24th Floor
1101 30th Street, N.W., Suite 115　　　　　　New York, New York 10004
Washington, DC 20007　　　　　　　　　　Telephone: (212) 363-7500
Telephone: (202) 524-4290　　　　　　　　　Facsimile: (212) 636-7171
Facsimile: (202) 337-1567

*Attorneys for Plaintiff*