**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RAYMOND BALESTRA, individually and
on behalf of all others similarly situated

       Plaintiff,

       v.

ATBCOIN LLC, EDWARD NG, HERBERT
W. HOOVER,

       Defendants.

Index No. 1:17-cv-10001-VSB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**

REITLER KAILAS & ROSENBLATT LLC
885 THIRD AVENUE
NEW YORK NEW YORK 10022
ATTORNEYS FOR DEFENDANTS ATBCOIN LLC, EDWARD NG AND HERBERT W. HOOVER

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................................ 1

Statement of Facts ..................................................................................................................... 3

Argument .................................................................................................................................... 5

    I.      Plaintiff's Claims that Defendants' Conduct Violated Federal
          Securities Laws Fail as a Matter of Law .................................................................. 5

      A.     Legal Standard ...................................................................................................... 5

      B.     Plaintiff Fails to State a Claim under Section 12(a) of the
            Securities Act Because ATB Coin is not a Security ............................................. 6

          i.      ATB Coin is not a Security because there are no
                Allegations that ATB Pooled the Purchasers' Assets or
                that Purchasers Shared in the Pro Rata Distribution of
                Profits .................................................................................................... 9

          ii.     ATB Coin is not a Security because any Profits or
                Losses were the Result of Market Fluctuations and not
                the Efforts of ATB ............................................................................. 12

      C.     ATB Coin Is A Currency Exempted From the Definition
            of Security ........................................................................................................... 15

      D.     Ng and Hoover are not ....................................................................................... 17

      E.     The Control Person Liability Claim Under Section 15(a) of
            the Securities Act Should Be Dismissed ............................................................ 17

    II.      Plaintiff Cannot Establish Personal Jurisdiction Over Ng or
          Hoover ................................................................................................................... 18

      A.     General Jurisdiction does not Exist because Plaintiff does
            not Allege that Ng or Hoover are Domiciled in the United
            States .................................................................................................................. 19

      B.     Plaintiff does not Allege any Conduct on the Part of Ng
            and Hoover that would Provide a Basis for Specific
            Jurisdiction ......................................................................................................... 20

Conclusion ............................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)...............................................................5, 6

Associated Gen. Contractors of California, Inc. v. California State Council of
    Carpenters, 459 U.S. 519, 526 (1983) ..............................................................15

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ...........................................6, 15

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)...............................4

Chew v. Deitrich, 143 F.3d 24, 28 (2d Cir.), cert. denied, 525 U.S. 948 (1998).......... 20

Citiline Holdings, Inc. v. iStar Fin. Inc., 701 F. Supp. 2d 506, 512 (S.D.N.Y.
    2010) ................................................................................................................17

Commodity Futures Trading Comm'n v. McDonnell, 2018 WL 1175156, at
    *12 (E.D.N.Y. Mar. 6, 2018) ...........................................................................14

Doe v. Delaware State Police, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013)..................19

Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999)...............18

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., 104 F. Supp. 3d 441
    (S.D.N.Y. 2015) , aff'd, 873 F.3d 85 (2017) ....................................................18

Gugick v. Melville Capital, LLC, 2014 WL 349526, at *4 (S.D.N.Y. Jan. 31,
    2014) .............................................................................................................9, 11

In re Alstom SA Sec. Litig., 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005).....................20

In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 185 (2d Cir.
    2011) ................................................................................................................18

In re Pretium Res. Inc. Sec. Litig., 256 F. Supp. 3d 459, 466 (S.D.N.Y. 2017).............4

In re Rhodia S.A. Sec. Litig., 531 F. Supp. 2d 527, 542–43 (S.D.N.Y. 2007)........ 20, 21

In re Roman Catholic Diocese of Albany, New York, Inc., 745 F.3d 30, 38 (2d
    Cir. 2014) .........................................................................................................19

In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000, 257 F. Supp. 2d 717,
    730 (S.D.N.Y. 2003).........................................................................................20

In the Matter of Munchee Inc., Administrative Proceedings, No. 3-18304,
    Release No. 10445, at ¶32 (December 11, 2017) ....................................10, 11, 13

Lehman Bros. Comm. Corp. v. Minmetals International Non-Ferrous Metals
    Trading Co., 179 F. Supp.2d 159, 164 (S.D.N.Y. 2001) ....................................13

Marini v. Adamo, 812 F. Supp. 2d 243, 258 (E.D.N.Y. 2011)................................9, 11

Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1425 (S.D.N.Y. 1985).....9, 10, 12

Merrill Lynch, Pierce, Fenner & Smith, Inc., SEC No-Action Letter, Fed. Sec.
    L. Rep. ¶80,037, 1974 WL 11078, at **6-7 (Dec. 26, 1974) ............................14

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. ), cert.
    denied, 519 U.S. 1006 (1996) ..........................................................................18

Meyer v. Bd. of Regents of Univ. of Oklahoma, 2014 WL 2039654, at *2
    (S.D.N.Y. May 14, 2014)..................................................................................19

Noa v. Key Futures, Inc., 638 F.2d 77 (9th Cir. 1980); SEC v. Belmont Reid &
    Co., Inc., 794 F.2d 1388 (9th Cir. 1986)......................................................13, 14

Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 180–81 (S.D.N.Y. 1995)............20

Pinter v. Dahl, 486 U.S. 622, 643, 647 (1988) ...........................................................17

Reich v. Lopez, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), aff'd, 858 F.3d 55
   (2d Cir.), cert. denied, 138 S.Ct. 282 (2018) ............................................................. 19
Revak v. SEC Realty Corp., 18 F.3d 81, 87 (2d Cir. 1994) .................................... 8, 9, 11
S.E.C. v. Cavanagh, 445 F.3d 105, 111 (2d Cir. 2006) .............................................. 6, 7
S.E.C. v. Edwards, 540 U.S. 389, 393 (2004). ............................................................. 15
San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris
   Companies, Inc., 75 F.3d 801, 808 (2d Cir. 1996) ...................................................... 4
Savage v. Galaxy Media & Mktg. Corp., 526 F. App'x 102, 103–04 (2d Cir.
   2013) ........................................................................................................................ 5, 6
Sea Pines of Virginia, Inc. v. PLD, Ltd., 399 F. Supp. 708, 712 (M.D. Fla.
   1975) ........................................................................................................................... 16
SEC v. Aqua–Sonic Prods. Corp., 687 F.2d 577, 582 (2d Cir.), cert. denied,
   459 U.S. 1086 (1982) ................................................................................................. 13
SEC v. Belmont Reid & Co., Inc., 794 F.2d 1388 (9th Cir. 1986) ......................... 13, 14
SEC v. Glenn W. Turner Enterprises, 474 F.2d 476 (9th Cir.) (9th Cir., cert.
   denied, 414 U.S. 84 (1973) ........................................................................................ 13
SEC v. Sharef, 924 F. Supp.2d 539, 544-545 (S.D.N.Y. 2013) ................................... 19
SEC v. Shavers, 2013 WL 4028182, *2 (E.D.Tex. Aug. 6, 2013) ............................... 11
SEC v. Softpoint, Inc., 2001 WL 43611, at *3 (S.D.N.Y. 2001)................................... 19
SEC v. W.J. Howey Co., 328 U.S. 293, 297 (1946).......................................... 7, 8, 12
Sinva, Inc. v Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F. Supp. 359,
   367 (S.D.N.Y. 1966) ........................................................................................ 8, 14, 15
SPV OSUS Ltd. v. UBS AG, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), aff'd,
   882 F.3d 333 (2d Cir. 2018)................................................................................... 19, 20
Svets v. Osborne Precious Metal Co., Inc., 1992 WL 281413, at *1 (N.D. Cal.
   June 8, 1992)................................................................................................... 7, 12, 13
United States v. Faiella, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ............................ 16
United States v. Leonard, 529 F.3d 83, 85 (2d Cir. 2008).................................. 8, 12, 13
United States v. Murgio, 209 F. Supp. 3d 698, 712 (S.D.N.Y. 2016) .......................... 16
United States v. Ulbricht, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014).......................... 16
Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F. Supp. 3d 301,
   315 (S.D.N.Y. 2015)..................................................................................................... 3
Walden v. Fiore, 134 S.Ct. 1115, 1122 (2014)............................................................. 20
Waldman v. Palestine Liberation Org., 835 F.3d 317, 337 (2d Cir. 2016), cert.
   denied, 2018 WL 1568032 (U.S. Apr. 2, 2018)....................................................... 20
Wolfe v. Bellos, 2012 WL 652090, at *8 (N.D. Tex. Feb. 28, 2012)............................. 7

## Statutes

15 U.S.C. ¶78(c)(a)(10) ................................................................................................ 15
15 U.S.C.A. §77............................................................................................... 6, 7, 18

## Other Authorities

Report of Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of
   1934: the DAO, Securities and Exchange Commission, Release No. 81207,
   2017 WL 7184670 (July 25, 2017)............................................................ 10, 11, 13

**Rules**

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ........................................................ passim

Defendants ATBCOIN LLC ("ATB" or the "Company"), Edward Ng ("Ng") and Herbert W. Hoover ("Hoover") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Raymond Balestra's Class Action Complaint for Violation of Sections 12(a)(1) and 15(a) of the Securities Act of 1933 (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Complaint is predicated entirely on the claim that Defendants sold unregistered securities in violation of the Securities Act of 1933 (the "Securities Act").[1] However, as is plain from the very offering documents identified in the Complaint, the ATB Coins sold by ATB were not securities, and, accordingly, did not have to be registered pursuant to the Securities Act. Accordingly, the Complaint should be dismissed in its entirety.

The Complaint offers only insufficient, conclusory allegations to support Plaintiff's claim that the ATB Coins at issue were securities. Plaintiff attempts to bolster its claim by referring to certain actions taken by the Securities and Exchange Commission (the "SEC") in connection with other digital coin offerings. Complaint, ¶¶44, 50-52. However, there has never been any judicial or administrative holding that digital coins are, *per se*, securities, or even that any particular digital coin offering constituted the sale of securities. Moreover, even if *some* coin offerings constitute the sale of securities, not all digital coins are the same. Plaintiff, in filing this Complaint, was obliged to explain why the ATB Coins at issue in this case constitute securities.

---

[1] Although Plaintiff's Complaint makes numerous conclusory allegations of fraud, Plaintiff does not assert any claim for securities or common law fraud. As Plaintiff acknowledges in the Complaint, ATB Coins could only be purchased with other digital currencies (*i.e.*, either Bitcoin, Ether, Litecoin, or, potentially, other digital currencies). Complaint, ¶5. Accordingly, the members of the purported class were sophisticated investors who already had knowledge about and experience in trading digital currencies before the ATB initial coin offering ("ICO").

Plaintiff has utterly failed to meet its burden in this regard.  Indeed, the documents identified in the Complaint make clear that Plaintiff cannot establish that ATB Coins constitute securities.

Ordinary commercial transactions such as Plaintiff's purchase of ATB Coins are outside the purview of the federal securities laws.  Under controlling Second Circuit law, ATB Coins cannot be securities because there is no common enterprise in which purchasers shared profits, and because any profits or losses in ATB Coins are the result of market fluctuations and not from the efforts of Defendants.  Moreover, ATB Coins are exempt from the securities laws because they constitute a form of currency.  ATB Coins were marketed as a virtual alternative to fiat currency, not as anything resembling securities, capable of handling "transactions between different devices" and making "payments to anyone in the world."  Complaint, ¶¶3, 27.  ATB Coins are, therefore, akin to gold and silver coins, which are purchased and traded like any asset.

While the Complaint makes much of the contention that purchase of ATB Coins constituted an "investment," as the Complaint recognizes, a purchaser was investing in the Coins themselves, not in a business enterprise.  *See* Complaint, ¶¶4, 6, 35, 37, 40.  The mere fact that a purchaser hopes to make a profit does not render the investment a securities transaction, any more than is the case in any speculative purchase of an asset or commodity.

Plaintiff's claims are also deficient because Ng and Hoover are not alleged to be sellers – therefore, they are not subject to Section 12(a)(1) – and because the Complaint contains no allegations to support control person liability under Section 15(a).  Indeed, there are no relevant factual allegations at all against Ng and Hoover which would establish a *prima facie* claim against either of them under the securities laws.

Ng and Hoover should also be dismissed because the Court cannot exercise personal jurisdiction over either individual. Ng and Hoover are both foreign residents and the Complaint does not allege any contacts between Ng and/or Hoover, the forum and the litigation.

Plaintiff's Complaint, which is conclusory, includes numerous irrelevant statements not related to ATB Coins or the Defendants, and purports to bring an action that is contrary to well-settled law, should be dismissed in its entirety under Rule 12(b)(6) . In addition, Ng and Hoover should also be dismissed under Rule 12(b)(2) .

## STATEMENT OF FACTS

Plaintiffs allege that Ng and Hoover are co-founders of ATB, which purportedly raised $20 million in digital cryptocurrencies through the ATB ICO. Complaint, ¶¶1, 15-16. Defendant Ng lives in China, while Defendant Hoover lives in Indonesia. Declaration of Edward Ng, dated April 13, 2018 ("Ng Decl.") at ¶3; Declaration of Herbert W. Hoover, dated April 12, 2018, ("Hoover Decl.") at ¶3.[2]

Plaintiff claims to have purchased ATB Coins issued in connection with the ATB ICO on August 21, 2017 in exchange for 2.1 Ether, which is another cryptocurrency. Complaint, ¶13. Plaintiff alleges that the ATB ICO launched on June 12, 2017 and concluded on September 15, 2017. Complaint, ¶¶28, 31. ATB issued a "Whitepaper" about ATB Coin on June 8, 2017 and a revised Whitepaper was issued on August 7, 2017 ("Whitepaper Revision 1.6"). Complaint, ¶27. Plaintiff does not include any allegations about the June version of the Whitepaper.

---

[2] The Ng Decl. and Hoover Decl. are referenced herein only for purposes of Ng and Hoover's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The declarations are not relevant to Defendants' motion pursuant to Rule 12(b)(6) , which is based exclusively on Plaintiff's deficient pleading and failure to state a claim, but can be considered by this Court in considering Defendants' motion to dismiss on jurisdictional grounds. *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 315 (S.D.N.Y. 2015).

According to Plaintiff, Whitepaper Revision 1.6 told investors that ATB Coin was developed as a virtual currency, not a security, that would "deliver blazing fast, secure and near-zero cost payments to anyone in the world," and, which "supports an unlimited number of transactions between different devices at high speed with its Lighting Network technology." Complaint, ¶¶3, 27.   Whitepaper Revision 1.6 makes clear the nature of the product being offered.   The characteristics of ATB Coins do not support Plaintiff's contention that such Coins constitute securities.   Thus, Whitepaper Revision 1.6 makes clear that one of the key features of ATB Coins is the potential to provide a solution to the deficiencies of micropayments and online payment services.   Declaration of Brian D. Caplan, dated April 13, 2018 ("Caplan Decl."), Ex. A, p. 23.   Further, Whitepaper Revision 1.6 told purchasers that ATB digital currency "is designed to overcome well-known inefficiencies within governmental central banks and other crypto currencies" and to induce "transactions that are fully secure, private and anonymous." *Id.*, pp. 2, 24.

The Court is permitted to consider the contents of Whitepaper Revision 1.6 and other documents which were relied on by Plaintiff in drafting the Complaint.   The Court's consideration of these materials does not transform Defendants' motion to dismiss into a motion for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (court permitted to considered the full contents of documents that were only partially quoted in the complaint); *In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 466 (S.D.N.Y. 2017) ("In evaluating a motion to dismiss in a securities action, a court may consider . . . statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").

Other than Whitepaper Revision 1.6, ATB's only alleged statements concerning ATB Coin prior to the ATB ICO stated that the company maintained offices and employees in New York and informed purchasers of ATB that they could potentially profit by using their business skills in transactions with ATB Coin. Complaint, ¶¶32, 35.

Ng and Hoover are not alleged to have been involved in the marketing of the ATB ICO or to have solicited the sale of ATB Coin. Ng is alleged to have made two public statements concerning his expectations on the size of the ATB ICO and investors' level of interest in the ATB ICO. Complaint, ¶¶2, 46. Hoover is not alleged to have made any public statements concerning the ATB ICO.

There are also no allegations that ATB was pooling purchasers' assets and/or distributing profits pro rata. In fact, to the contrary, ATB told purchasers after the ATB ICO launch to use ATB Coin "in everyday life," as they would any other currency, *i.e.*, as a fully virtual medium of exchange. Complaint, ¶¶3, 27, 40.

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS THAT DEFENDANTS' CONDUCT VIOLATED FEDERAL SECURITIES LAWS FAIL AS A MATTER OF LAW

#### A.   Legal Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Savage v. Galaxy Media & Mktg. Corp.*, 526 F. App'x 102, 103–04 (2d Cir. 2013). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In reviewing the complaint, a plaintiff's "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Iqbal*, 556 U.S. at 678 ("pleading standard [under] Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Savage*, 526 F. App'x at 104 (*citing Iqbal*, 556 U.S. at 678) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

For the reasons set forth below, the facts alleged in the Complaint, and the documents referenced therein, establish that ATB Coins are not securities subject to the registration requirements of Section 5 of the Securities Act. Moreover, even if ATB Coin is a security, which it is not, there are no allegations that Ng and Hoover were sellers as required for liability under Section 12(a). Finally, the control person allegations against Ng and Hoover are conclusory and do not withstand the scrutiny required by *Twombly*. Plaintiff's claims fail as a matter of law and should be dismissed.

### B. Plaintiff Fails to State a Claim under Section 12(a) of the Securities Act Because ATB Coin is not a Security

Plaintiff brings this action against ATB, Ng and Hoover for failing to register ATB Coin in violation of Section 5 of the Securities Act. Section 5 "requires that securities be registered with the SEC before any person may sell or offer to sell such securities." *S.E.C. v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006); 15 U.S.C.A. §77e. Section 12(a) of the Securities Act creates civil liability for violations of the registration provisions contained in Section 5. 15 U.S.C.A. §77l. Therefore, to state a claim under Section 12(a), by way of Section 5, a plaintiff must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in

connection with the offer or sale." *Cavanagh*, 445 F.3d at 119.  Plaintiff cannot make such a showing, however, because the Complaint does not, and cannot, sufficiently allege that ATB Coin is a security.  *Wolfe v. Bellos*, 2012 WL 652090, at *8 (N.D. Tex. Feb. 28, 2012) ("the court is not required to accept as true her conclusory statement that the loans are investments that qualify as securities."); *Svets v. Osborne Precious Metal Co., Inc.*, 1992 WL 281413, at *1 (N.D. Cal. June 8, 1992) ("if plaintiff fails to adequately allege a security, the securities law counts may be properly dismissed under Rule 12(b)(6)").

"Section 2(1) of the Act defines the term 'security' to include the commonly known documents traded for speculation or investment" as well as securities "of a more variable character."[3] *SEC v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946).  Plaintiff does not allege that ATB Coin is one of the commonly known instruments that qualify as a security such as stock, notes or bonds.  Plaintiff only claims that ATB Coin exhibits "particular hallmarks" of a security under the *Howey* test.  Complaint, ¶56.

---

[3] The complete definition of the term "security" as defined in Section 2(1) of the Securities Act is as follows:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C.A. § 77b.

Plaintiff's allegations are deficient, as a matter of law, because all Plaintiff claims is that the purchase of ATB Coins constituted an "investment." However, the mere fact that a purchaser hoped to make a profit on ATB Coins does not render such coins securities, any more than a speculative investment in any asset or commodity constitutes a securities transaction. *Sinva, Inc. v Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 367 (S.D.N.Y. 1966) ("The mere presence of a speculative motive on the part of the purchaser or seller does not evidence the existence of an 'investment contract' within the meaning of the securities acts.").

In the landmark *Howey* decision, the Supreme Court defined the phrase "investment contract" for purposes of Section 2(1) to "mean[] a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298-299; *see United States v. Leonard*, 529 F.3d 83, 85 (2d Cir. 2008) ("the Supreme Court established the test for whether a given financial instrument or transaction constitutes an "investment contract" and, therefore, a security-for purposes of the federal securities laws."). In *Revak v. SEC Realty Corp.*, the Second Circuit held that "[t]he three elements of the Howey test must all be present . . . to constitute a security: (i) an investment of money (ii) in a common enterprise (iii) with profits to be derived solely from the efforts of others." 18 F.3d 81, 87 (2d Cir. 1994).

Therefore, in order to state a claim under Section 12(a) of the Securities Act, Plaintiff must allege facts to support a finding that ATB Coin meets the definition of an investment contract under *Howey*. The allegations in the Complaint, however, do not satisfy the second or third elements of the test outlined in *Howey* and therefore Plaintiff's claims fail as a matter of law.

i.     **ATB Coin is not a Security because there are no Allegations that ATB Pooled the Purchasers' Assets or that Purchasers Shared in the Pro Rata Distribution of Profits**

Plaintiff alleges that a common enterprise exists solely because "the investment of money was made into the common enterprise that is ATB and the potential future ATB Blockchain." ¶56. These allegations are insufficient under controlling Second Circuit law, which requires that a common enterprise must be established by a showing of "horizontal commonality: the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *Revak*, 18 F.3d at 87; *Gugick v. Melville Capital*, LLC, 2014 WL 349526, at *4 (S.D.N.Y. Jan. 31, 2014); *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1425 (S.D.N.Y. 1985).

Horizontal commonality is not present here because ATB was not offering potential purchasers of ATB Coin "the opportunity to contribute funds and *share* in the profits" of any ATB-managed transaction. *Marini v. Adamo*, 812 F. Supp. 2d 243, 258 (E.D.N.Y. 2011). ATB offered to sell ATB Coin as a means to "deliver . . . near-zero cost payments to anyone in the world," with the goal of using "ATB Coin in everyday life." Complaint, ¶¶3, 40. The Whitepaper reinforced the goal of ATB Coin as a currency to "support[] an unlimited number of transactions between different devices at high speed with its Lightning Network technology." Complaint, ¶27.

Plaintiff's allegations reveal that purchasers gained no share in a common enterprise, but rather exercised individual control over the ATB Coin asset. There is no allegation that Defendants, or any other third party, had control over the ATB Coins sold to Plaintiff and members of the purported class. The coins were like any other investment vehicle, such as gold

or silver coins:  once sold, the value of the coins depended on market forces, independent of the commercial actions of Defendants or any third party.

Further, the funds contributed by any individual purchaser of ATB Coin are not alleged to have been pooled with other purchasers to share in the upside of ATB.  *Mechigian*, 612 F. Supp. at 1425 ("Horizontal commonality clearly does not exist . . . .  Nowhere does plaintiff allege that his funds were pooled with other investors' funds.") (internal quotations omitted). Indeed, the opposite is alleged:  the Complaint admits that the ability of a purchaser of ATB Coin to profit or "maximize their capital" was based on the purchaser "using their business skills" and not relying on a pro rata distribution.  Complaint, ¶35.  Accordingly, Plaintiff has not alleged sufficient facts to support a claim of horizontal commonality.

In the Complaint, Plaintiff references certain actions taken by the SEC against different entities, and certain statements made by the Chairman of the SEC in 2017.  Complaint, ¶¶44, 50-52.  Plaintiff does not, and cannot, explain how these allegations bear upon ATB Coins or the purported actions of the Defendants.  Defendants are aware of no judicial or administrative finding that digital currencies are, *per se*, securities.  Rather, as Plaintiff readily acknowledges, the legal claims asserted in the Complaint must stand or fall based upon the standard set forth in *Howey* and its progeny.  Under that standard, ATB Coins are simply not securities.

The facts of this case are also distinguishable from those relating to two recent actions referenced in the Complaint, in which the SEC contended that two token offerings met the definition of an investment contract.  Complaint, ¶¶44, 52.  *Report of Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of 1934: the DAO*, Securities and Exchange Commission, Release No. 81207, 2017 WL 7184670 (July 25, 2017); *In the Matter of Munchee Inc.,* Administrative Proceedings, No. 3-18304, Release No. 10445, at ¶32 (December 11, 2017)

-10-

(Caplan Decl., Ex. B).  In *DAO*, the SEC chose not to commence enforcement proceedings, but issued a Report explaining why the digital coins at issue were, in the SEC's view, securities.  In that case, the digital coins that were exchanged to purchased tokens "was pooled and available to The DAO to fund projects, which DAO Token holders could vote on" and "stood to share in potential profits from the contracts." 2017 WL 7184670, at *9.  By contrast, the Complaint does not allege that ATB Coin holders received any voting rights (which are commonly associated with common stock) and therefore ATB Coin holder did not share in any potential profits.

Likewise, in *Munchee*, the SEC found that investments in Munchee were used collectively to build an "ecosystem," revise a mobile application and build on the numbers of restaurants and users that participated on the Munchee app to sell food and write reviews, which purportedly would increase the value of the Munchee Tokens.  Administrative Proceedings, No. 3-18304, at ¶32.  Similar facts do not exist with respect to ATB Coin.

In addition to horizontal commonality, district courts in this Circuit recognize that a common enterprise can be established through strict vertical commonality, which requires that "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Gugick*, 2014 WL 349526, at *4; *Marini*, 812 F. Supp. at 256 ("strict vertical commonality exists where there is a one-to-one relationship between the investor and investment manager such that there is an interdependence of *both profits and losses* of the investment.") (emphasis in original).[4]

---

[4] A third approach to finding a common enterprise, through what has been called "broad vertical commonality," has been rejected by the Court of Appeals for the Second Circuit. *Revak*, 18 F.3d at 88.  A district court in the Fifth Circuit, where broad vertical commonality is recognized, has held that a savings and trust company's investment strategy of selling Bitcoin constituted a security. *SEC v. Shavers*, 2013 WL 4028182, *2 (E.D.Tex. Aug. 6, 2013).  However, the court did not say that transactions in Bitcoin itself constituted a security (here, Plaintiff purchased ATB Coin directly and not through a third party investment firm's trading strategy) and, unlike

However, the Complaint does not contain any facts to support strict vertical commonality.  As the court held in *Gulick*, "[i]n situations where courts have found strict vertical commonality, the promoter's fees were directly tied to whether the investor secured a profit on his investment."  2014 WL 349526, at *5.  The Complaint does not contain a single allegation tying the profits and losses of ATB Coin purchasers with the success or failure of ATB. *Mechigian*, 612 F. Supp. at 1427.  To the contrary, since Plaintiff purchased ATB Coins with Ether, the Company would profit, while Plaintiff would suffer losses, if the value of Ether increased and the value of ATB Coin decreased.  *See Svets*, 1992 WL 281413, at *1 (plaintiff failed to meet second prong of *Howey* for purchases of precious metals where "the success or failure of the brokerage house did not correlate with individual investor profit or loss.").  For the reasons stated above, Plaintiff cannot satisfy the common enterprise element of the *Howey* test and, therefore, cannot plead that ATB Coin is a security.

### ii. ATB Coin is not a Security because any Profits or Losses were the Result of Market Fluctuations and not the Efforts of ATB

The third element of the *Howey* test examines whether profits from the transaction are derived "solely through the efforts of the promoter or of some one other than themselves." *Howey*, 328 U.S. at 298.  In the Second Circuit, the term "solely" has not been construed literally; *Howey* is satisfied if "the scheme was being promoted primarily as an investment or as a means whereby participants could pool their own activities, their money and the promoter's contribution in a meaningful way." *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008) (*citing SEC v. Aqua–Sonic Prods. Corp.*, 687 F.2d 577, 582 (2d Cir.), *cert. denied*, 459 U.S.

---

Plaintiff's claim against ATB Coin, the "investors . . . were dependent on Shavers' expertise in Bitcoin markets and his local connections."  *Id.*

1086 (1982)).[5]   However, the Complaint does not allege that purchasers of ATB Coin were pooling their own activities and money with that of any contribution from ATB.   In fact, as stated above, the Complaint acknowledges that ATB Coin was being marketed for its individualistic uses.   Complaint, ¶¶3, 27, 40.

Moreover, a plaintiff cannot meet its burden under *Howey* where "any gain likely would result in large part from market movements, not from capital appreciation due to [seller's] efforts." *Lehman Bros. Comm. Corp. v. Minmetals International Non-Ferrous Metals Trading Co.*, 179 F. Supp.2d 159, 164 (S.D.N.Y. 2001);[6] *Svets*, 1992 WL 281413, at *2 ("once plaintiff made their investment, their profits depended upon the fluctuations of the market, not the managerial efforts of the defendants.").   In two similar cases, the Ninth Circuit affirmed dismissals of Securities Act claims brought by purchasers of gold coins and medallions and silver bars against the sellers. *SEC v. Belmont Reid & Co., Inc.*, 794 F.2d 1388 (9th Cir. 1986); *Noa v. Key Futures, Inc.*, 638 F.2d 77 (9th Cir. 1980).[7]   In both instances, the Ninth Circuit held that once the purchase of gold or silver was made, "the investor depended on the fluctuations of

---

[5] In its report on The DAO, the SEC found that investors relied on the efforts of the company that created The DAO and its founders for managerial purposes, including selecting the proposals that DAO holders were supposed to vote on to drive the direction of the company. *The DAO*, 2017 WL 7184670, at *9-*10.   The SEC found that holders of Munchee Tokens also relied on the managerial efforts of Munchee and its agents. *In the Matter of Munchee Inc.,* Release No. 10445, at ¶33.   Plaintiff does not allege that investors relied on any promised managerial efforts of ATB.

[6] In *Lehman Bros.*, the court applied the *Howey* test for purposes of defining what is a "security" under New York's Martin Act and found that foreign currency trades did not satisfy broad vertical commonality.   Even though broad vertical commonality has been rejected by the Second Circuit, the court's reasoning applies equally as well to the third element of the *Howey* test – whether the promoter's efforts contributed in a meaningful way to the participants' profits – in analyzing whether ATB Coin is a security under the Securities Act.

[7] Both the Second Circuit and Ninth Circuit apply the third element of the *Howey* test in a similar manner. *Leonard*, 529 F.3d at 88 (following Ninth Circuit's holding in *SEC v. Glenn W. Turner Enterprises*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 84 (1973)).

the . . . market, not the managerial efforts of [sellers]." *Noa*, 638 F.2d at 79; *Belmont*, 794 F.2d at 1391. By comparison, any expected return by purchasers of ATB Coin was based on the supply and demand of the ATB Coin market and the variable uses of ATB Coin that were left to the skill of the purchasers themselves, including the decision of whether and at what price to exchange ATB Coin. Complaint, ¶¶ 3, 35.

Similarly, the SEC Division of Corporate Finance stated in a no-action letter that it would recommend no enforcement action over a broker-dealer's proposal to offer to sell gold bullion, even though the broker-dealer's services included opining on the suitability of gold in a customer's portfolio, because "the choice of when, whether and at what price to purchase or sell gold will be made solely by the individual customer." *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, SEC No-Action Letter, Fed. Sec. L. Rep. ¶80,037, 1974 WL 11078, at **6-7 (Dec. 26, 1974). Plaintiff cannot deny that he was provided those same choices without any input from ATB.

Plaintiff's allegation that potential returns were "entirely reliant on Defendants' ability to create the promised ATB Blockchain" (Complaint, ¶56) is of no effect because the risk plaintiff assumed "was that which any buyer takes when he pays in advance for goods to be delivered in the future." *Noa*, 638 F.2d at 80. "[T]he element of future delivery does not transform a commodities contract into a securities contract." *Sinva, Inc. v Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 366 (S.D.N.Y. 1966).[8] Just like the purchasers in *Noa* and *Belmont*, who assumed the risk of delivery of the precious metals they were purchasing, Plaintiff allegedly assumed that the blockchain underlying ATB Coin would be constructed. However,

---

[8] The Eastern District of New York has recently held that virtual currencies are commodities. *Commodity Futures Trading Comm'n v. McDonnell*, 2018 WL 1175156, at *12 (E.D.N.Y. Mar. 6, 2018).

that fact is not enough to state a claim because, with respect to the third element of the *Howey* test, the success of the venture depended on fluctuations in the supply and demand of ATB Coin, which plaintiff does not allege was controlled by ATB.

Finally, Plaintiff's allegation that ATB Coin purchasers reasonably expected profits, which ATB allegedly touted, does not turn the sale of ATB Coin into a securities transaction. Complaint, ¶6. "The mere presence of a speculative motive on the part of purchaser or seller does not evidence the existence of an 'investment contract' within the meaning of the securities acts. In a sense anyone who buys or sells a horse or an automobile hopes to realize a profitable 'investment.'" *Sinva*, 253 F. Supp. at 367.

Plaintiff's allegations fall woefully short of the showing required by *Twombly* to state a claim. 550 U.S. at 570. Plaintiff does not allege the existence of a common enterprise or that profits were reasonably expected from the managerial efforts of ATB. These facts are essential under the second and third elements of the *Howey* test to allege the existence of a security. It is not the role of the Court to "to assume that the [plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Complaint is deficient – there are no facts to raise a plausible claim that ATB Coin is security for purposes of Sections 5 or 12 of the Securities Act - and Plaintiff's claims should be dismissed.

### C.  ATB Coin Is A Currency Exempted From the Definition of Security

The Securities Exchange Act of 1934 (the "Exchange Act") excludes from the definition of "security" the word "currency." 15 U.S.C. ¶78(c)(a)(10). And while the exact language of the exclusion does not carry over into the definition of "security" in the Securities Act, the Supreme Court has treated the definition of "security" under the Securities Act and Exchange Act "as essentially identical in meaning." *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004).

Therefore, because ATB Coin is a currency, it cannot be treated as a security under the federal securities laws.

The term "currency" is commonly understood to mean "something (as coins, treasury notes, and banknotes) that circulates as a medium of exchange." Black Law Dictionary (8th Ed. 2004); Merriam-Webster Online, available at https://www.merriam-webster.com/dictionary/currency ("circulation as a medium of exchange.").[9]   Courts in the Second Circuit have found that other cryptocurrencies, Bitcoin in particular, function as a medium of exchange. *United States v. Murgio*, 209 F. Supp. 3d 698, 712 (S.D.N.Y. 2016) (finding under Florida law that Bitcoins function as a "medium of exchange" and "payment instrument"); *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ("Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions."); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ("the only value for Bitcoin lies in its ability to pay for things. . . ."). According to its plain definition, Bitcoin therefore qualifies as a currency. On the other hand, no court has found that Bitcoin is a security.

Similarly, Plaintiff's allegations confirm that ATB Coin is a currency because of its function as a medium of exchange. Indeed, the Complaint quotes from Whitepaper Revision 1.6, which states that ATB Coin can act as a medium of exchange that "delivers blazing fast, secure and near-zero cost payments to anyone in the world." Complaint, ¶3. The Complaint also alleges, based on Whitepaper Revision 1.6, that ATB Coin "supports an unlimited number of transactions between different devices." Complaint, ¶27. Whitepaper Revision 1.6 touts ATB

---

[9] Currency is not limited to legal tender issued by a particular country. *Sea Pines of Virginia, Inc. v. PLD, Ltd.*, 399 F. Supp. 708, 712 (M.D. Fla. 1975).

Coins as a way to provide a solution to the deficiencies of micropayments and online payment services, "overcome well-known inefficiencies within governmental central banks and other crypto currencies" and to induce "transactions that are fully secure, private and anonymous." Caplan Decl., Ex. A, pp. 2, 23.  ATB Coins therefore function as a currency and is exempt from the registration requirements of the Securities Act.

### D.  Ng and Hoover are not "Sellers" of Securities Pursuant to Section 12(a)

Ng and Hoover are not alleged to be sellers of ATB Coin and therefore are not liable under Section 12(a)(1).  The Supreme Court has stated that the range of persons potentially liable under Section 12(a)(1) extends to persons who pass title of the security or "who actively solicit the sale of securities with a motivation to serve his own financial interest or those of the securities owner engage in solicitation of the security." *Pinter v. Dahl*, 486 U.S. 622, 643, 647 (1988); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010).

There are no allegations that Ng and Hoover passed title of ATB Coin to any purchasers and no allegations that they actively solicited the sale or offer of sale to purchasers.  In fact, there are no specific factual allegations related to Hoover, and not a single mention of Hoover's involvement in the sale of ATB Coin.  Hoover is only mentioned in the Complaint as a co-founder of ATB.  The Complaint does specifically mention Ng, but the two press releases cited by Plaintiff reflect Ng's thoughts on ATB Coin's potential and status of the ATB ICO and do not reflect any active solicitation efforts.  Complaint, ¶¶2, 46.  These allegations are insufficient to subject Ng and Hoover to liability as sellers of ATB Coin.

### E.  The Control Person Liability Claim Under Section 15(a) of the Securities Act Should Be Dismissed

In addition to Plaintiff's baseless claim that the Ng and Hoover are primary violators, Plaintiff's alleged control person liability over Ng and Hoover under Section 15(a) of the

Securities Act also fails. 15 U.S.C.A. § 77o. In order to allege a prima facie case of control person liability, a plaintiff must establish a primary violation of a provision of the Securities Act and control of the primary violator by defendants. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441 (S.D.N.Y. 2015), *aff'd*, 873 F.3d 85 (2017). The Second Circuit has defined control as "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (citations omitted).

In two sentences, Plaintiff asserts, in conclusory fashion and without providing any substantiating facts, that Ng and Hoover had the ability to influence, and did influence, ATB's decisions by virtue of their "positions as officers and/or directors." ¶59. Such allegations are insufficient to establish control person liability. *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999); *Fed. Hous. Fin. Agency*, 104 F. Supp. 3d at 5760 ("Officer or director status alone does not constitute control").

There are no other allegations in the Complaint that Plaintiff can rely on to support its control person liability claim. There are no specific allegations that Ng or Hoover directed or managed ATB operations or policies. Notably, Plaintiff does not allege what role, if any, Ng and Hoover played in connection with the ATB ICO. In light of Plaintiff's failure to allege any facts demonstrating actual control, Plaintiff's claim under Section 15(a) must be dismissed.

## II.   PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER NG OR HOOVER

A plaintiff has the burden of establishing personal jurisdiction to overcome a pre-discovery motion to dismiss pursuant to Rule 12(b)(2). *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996). While a plaintiff is only

required to make a *prima facie* showing of personal jurisdiction, conclusory non-fact-specific jurisdictional allegations will not overcome a motion to dismiss, and a moving defendant may adduce evidence to controvert a plaintiff's allegations. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013).

The touchtone of a personal jurisdiction analysis is whether due process has been satisfied. First, a court must determine whether the defendant has sufficient contacts with the forum state and second, if the proper contacts are found, the court may assert jurisdiction if it is reasonable under the circumstances of the particular case. *SEC v. Softpoint, Inc.*, 2001 WL 43611, at *3 (S.D.N.Y. 2001). In federal question cases involving claims where Congress has provided for nationwide service of process, the defendant must have substantial contacts with the United States and not the forum state alone. *Id.*, p. *5; *SEC v. Sharef*, 924 F. Supp.2d 539, 544-545 (S.D.N.Y. 2013). A plaintiff can establish the necessary minimum contacts under a general or specific theory of jurisdiction. Here, however, Plaintiff fails to allege the necessary contacts to support a finding of personal jurisdiction by Ng or Hoover under either theory.

### A. General Jurisdiction does not Exist because Plaintiff does not Allege that Ng or Hoover are Domiciled in the United States

It is well established that "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014). General jurisdiction is therefore satisfied where an individual defendant is "at home in the state of his domicile." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir.), *cert. denied*, 138 S.Ct. 282 (2018) (*citing Meyer v. Bd. of Regents of Univ. of Oklahoma*, 2014 WL 2039654, at *2 (S.D.N.Y. May 14, 2014) (internal quotations omitted); *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*,

257 F. Supp. 2d 717, 730 (S.D.N.Y. 2003) (defendant's contacts must approximate physical presence). Accordingly, there is no general jurisdiction over either Ng or Hoover because neither defendant is domiciled in the United States. Ng Decl. at ¶3; Hoover Decl. at ¶3.

### B. Plaintiff does not Allege any Conduct on the Part of Ng and Hoover that would Provide a Basis for Specific Jurisdiction

Specific jurisdiction is established if the "defendant's conduct . . . form[s] the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014). In the Second Circuit, a plaintiff must show that the claim arises out of or relates to the defendant's contacts in the forum state, that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being "haled into court" in the forum state. *Chew v. Deitrich*, 143 F.3d 24, 28 (2d Cir.), *cert. denied*, 525 U.S. 948 (1998); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018). A focus on the relationship of the defendants, the forum, and the defendants' suit-related conduct points to the conclusion that there is no specific personal jurisdiction over the defendants for the torts in this case. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016), *cert. denied*, 2018 WL 1568032 (U.S. Apr. 2, 2018).

Plaintiff's Complaint contains no allegations that Ng or Hoover had any contact with the forum related to Plaintiff's underlying securities claim. The Complaint identifies Ng and Hoover as co-founders and executives of ATB, but that allegation alone does not justify a finding of personal jurisdiction as to either defendant. *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 542–43 (S.D.N.Y. 2007); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 180–81 (S.D.N.Y. 1995). Likewise,

Plaintiff's control person allegations against Ng and Hoover, without more, do not support a finding of personal jurisdiction. *In re Rhodia*, 531 F. Supp. at 542.

In order to carry its burden, Plaintiff had to allege necessary contacts for each specific defendant.  Plaintiff has not set forth any specific allegation that Ng or Hoover, both of whom are foreign residents, effectuated any transactions or authorized any actions in the forum that relate to the misconduct alleged in the Complaint, the failure to register alleged securities.[10]  *In re Rhodia*, 531 F. Supp. at 542 (plaintiff "responsible for making good faith allegations which would establish a prima facie showing of personal jurisdiction.").    Accordingly, the claims against Ng and Hoover should be dismissed for lack of personal jurisdiction.

---

[10] The fact that there are no allegations that Ng's and/or Hoover's contacts are relevant to the ICO at issue is consistent with and supports Defendants' argument that Ng and Hoover are not sellers pursuant to Section 12(a). *See supra*, §I(D).

## CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice.  ATB Coin is not a security within the meaning of Section 5(a) of the Securities Act of 1933 and therefore no right of action exists against Defendants under Section 12(a).  Hoover and Ng should also be dismissed because they are not alleged to be sellers under Section 12(a).  Furthermore, even if Plaintiff could state a claim that ATB Coin had to be registered, which it does not, Plaintiffs do not plead that Ng and Hoover were control persons under Section 15(a).  Finally, there is no basis to find personal jurisdiction over Ng and Hoover under the allegations of the Complaint.

Dated: April 13, 2018                    REITLER KAILAS & ROSENBLATT LLC

By: _s/ Brian D. Caplan_____
Brian D. Caplan
Edward P. Grosz
Brett Van Benthysen
885 Third Avenue, 20th Floor
New York, NY 10022
Tel.:  (212) 209-3059
bcaplan@reitlerlaw.com
egrosz@reitlerlaw.com
bvanbenthysen@reitlerlaw.com

*Attorneys for Defendants ATBCOIN LLC,
Edward Ng and Herbert W. Hoover*