**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RAYMOND BALESTRA, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

ATBCOIN LLC, EDWARD NG, HERBERT
W. HOOVER,

Defendants.

C.A. No. 1:17-cv-10001-VSB-BCM

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Dated: April 27, 2018

**LEVI & KORSINSKY, LLP**

Christopher J. Kupka (CK-9010)
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Donald J. Enright
Elizabeth K. Tripodi
John A. Carriel
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 337-1567

*Attorneys for Plaintiff Raymond Balestra*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT ................................................................................................................3

     I.      STANDARDS OF LAW .................................................................................3

          A.     Section 5 and Section 12(a)(1) of the Securities Act ...................................3

          B.     Standards of Law upon a Motion to Dismiss..............................................4

     II.     ATB COINS ARE INVESTMENT CONTRACT SECURITIES..........................5

          A.     The *Howey* Standard Defines a Security. ..................................................5

          B.     Plaintiff and the Proposed Class Invested in a Common Enterprise. ..........6

               1.     The Complaint Alleges Facts Sufficient to Establish Horizontal Commonality....................................................................................6

                    a.  The Complaint's Allegations ...................................................6

                    b.  Defendants' Distractions Are Irrelevant and Misleading. .........8

               2.     The Complaint Alleges Facts Sufficient to Establish Vertical Commonality...................................................................................10

          C.     Plaintiff and the Proposed Class Were Led to Expect Profits Solely from the Efforts of Defendants. ...............................................................11

          D.     ATB Coin Is Not a "Real" Currency. ......................................................16

     III.    PLAINTIFF'S ALLEGATIONS THAT THE INDIVIDUAL DEFENDANTS ARE PRIMARILY LIABLE OR LIABLE AS CONTROL PERSONS ARE WELL PLED..............................................................................17

          A.     The Individual Defendants Are Primarily Liable. .....................................17

          B.     The Individual Defendants Are Subject to Control Person Liability.........20

     IV.    PLAINTIFF HAS ESTABLISHED PERSONAL JURSIDICTION OVER THE INDIVIDUAL DEFENDANTS...................................................................22

          A.     Legal Standards Concerning Personal Jurisdiction...................................22

          B.     The Individual Defendants Are Subject to Specific Jurisdiction...............23

CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*In re Alstom SA Sec. Litig.*,
　406 F. Supp. 2d 346 (S.D.N.Y. 2005)...................................................................... 24

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
　493 F.3d 87 (2d Cir. 2007)........................................................................................ 20

*Best Van Lines, Inc. v. Walker*,
　490 F.3d 239 (2d Cir. 2007)...................................................................................... 23

*Brodt v. Bache & Co., Inc.*,
　595 F.2d 459 (9th Cir. 1978) .................................................................................... 10

*Commodity Futures Trading Comm'n v. McDonnell*,
　No. 18-cv-361-JBW, 2018 U.S. Dist. LEXIS 36854 (E.D.N.Y. Mar. 6, 2018) ..................... 15

*DiStefano v. Carozzi N. Am., Inc.*,
　286 F.3d 81 (2d Cir. 2001)........................................................................................ 23

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
　928 F. Supp. 2d 735 (S.D.N.Y. 2013)....................................................................... 23

*Gugick v. Melville Capital, LLC*,
　No. 11-cv-6294-CS, 2014 U.S. Dist. LEXIS 12234 (S.D.N.Y. Jan. 31, 2014) ............. 5, 6, 10

*Hart v. Pulte Homes of Michigan Corp.*,
　735 F.2d 1001 (6th Cir. 1984) .................................................................................... 7

*Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*,
　205 F. Supp. 2d 243 (S.D.N.Y. 2002)....................................................................... 11

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
　650 F.3d 185 (2d Cir. 2011)...................................................................................... 21

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
　84 F.3d 560 (2d Cir. 1996).................................................................................. 22, 23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
　135 S. Ct. 1318 (2015) ............................................................................................... 3

*Oneida Sav. Bank v. Uni-Ter Underwriting Mgmt. Corp.*,
　No. 13-cv-746-MAD-ATB, 2014 U.S. Dist. LEXIS 130677
　(S.D.N.Y. Sept. 18, 2014)......................................................................................... 22

*In re Parmalat Sec. Litig.*,
　376 F. Supp. 2d 449 (S.D.N.Y. 2005).................................................................. 23, 25

*Pinter v. Dahl*,
　486 U.S. 622 (1988).......................................................................................... 3, 17, 20

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................. 20

*Revak v. SEC Realty Corp.*,
    18 F.3d 81 (2d Cir. 1994) ............................................................................ 6, 7, 10

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co., Inc.*,
    75 F.3d 801 (2d Cir. 1996) .................................................................................... 2

*In re Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................. 20

*SEC v. Aqua-Sonic Prods. Corp.*,
    687 F.2d 582 (2d Cir. 1982) ................................................................................ 11

*SEC v. Carrillo Huttel LLP*,
    No. 13-cv-1735-GBD-JCF, 2017 U.S. Dist. LEXIS 6570
    (S.D.N.Y. Jan. 17, 2017) ............................................................................... 4, 13

*SEC v. Cavanaugh*,
    1 F. Supp. 2d 337 (S.D.N.Y.) ....................................................................... 4, 13

*SEC v. Chinese Consol. Benev. Ass'n, Inc.*,
    120 F.2d 738 (2d Cir. 1941) ................................................................................ 18

*SEC v. Edwards*,
    540 U.S. 389 (2004) ...................................................................................... 5, 16

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) .............................................................................. 21

*SEC v. Softpoint, Inc.*,
    No. 95-cv-2951-GEL, 2001 U.S. Dist. LEXIS 286 (S.D.N.Y. Jan. 17, 2001) ..................... 22

*SEC v. Straub*,
    No. 11-cv-9645-RJS, 2016 U.S. Dist. LEXIS 136841
    (S.D.N.Y. Sept. 30, 2016) ................................................................................. 23

*SEC v. Tecumseh Holding Corp.*,
    No. 03-cv-5490-SAS, 2009 U.S. Dist. LEXIS 119869
    (S.D.N.Y. Dec. 22, 2009) ............................................................................ 18, 20

*SEC v. Universal Express, Inc.*,
    475 F. Supp. 2d 412 (S.D.N.Y. 2007) ................................................................... 4

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ................................................................................. *passim*

*Shanahan v. Vallat*,
    No. 03-cv-3496-MBM, 2004 U.S. Dist. LEXIS 25523
    (S.D.N.Y. Dec. 19, 2004) ................................................................................. 22

*Sinva v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    253 F. Supp. 359 (S.D.N.Y. 1966) ....................................................................... 14

*Tcherepnin v. Knight*,
    389 U.S. 332 (1967)..................................................................................... 17

*Tsirelman v. Daines*,
    794 F.3d 310 (2d Cir. 2015)............................................................. 4, 8, 17, 21

*United Housing Found., Inc. v. Forman*,
    421 U.S. 837 (1975)..................................................................................... 17

*United States v. Leonard*,
    529 F.3d 83 (2d Cir. 2008)...................................................................... 11, 14

## Statutes

15 U.S.C. § 77b(a)(1)........................................................................................ 5

15 U.S.C. § 77e .............................................................................................. 3

15 U.S.C. § 77l(a)(1)................................................................................. *passim*

15 U.S.C. § 77o(a) ..................................................................................... 1, 20

15 U.S.C. § 78(c)(a)(10) ................................................................................ 16

## Rules

FED. R. CIV. P. 8............................................................................................ 4, 17

FED. R. CIV. P. 12(b)(2) ............................................................................... 1, 23

FED. R. CIV. P. 12(b)(6) ................................................................................. 1, 4

## Other Authorities

*In re Coinflip, Inc.*,
    CFTC No. 15-29, 2015 CFTC LEXIS 20 (Sept. 17, 2015) .................................. 16

*Munchee Inc.*,
    Securities Act Release No. 10,445 (Dec. 11, 2017)..................................... 8, 9, 10

*Report of Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of 1934:
    The DAO*,
    Exchange Act Release No. 81,207, 2017 WL 7184670 (July 25, 2017) ............................. 8, 9

Plaintiff Raymond Balestra ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Dkt. No. 27 (the "Motion"), filed by Defendants ATBCOIN LLC ("ATB"), Edward Ng ("Ng") and Herbert W. Hoover's ("Hoover," and together with Ng, the "Individual Defendants" (collectively, "Defendants").[1]

## PRELIMINARY STATEMENT

On April 13, 2018, Defendants filed the Motion, which argues that the Complaint[2] should be dismissed because: (1) the Complaint purportedly fails to allege facts sufficient to satisfy elements two and three of the *Howey* test; (2) ATB Coins are purportedly "currency" and thus exempt from the federal securities laws; (3) the Complaint purportedly fails to allege facts sufficient to show that the Individual Defendants are "sellers" under Section 12(a)(1) or subject to control person liability under Section 15(a) of the Securities Act of 1933 ("Securities Act"); and (4) this Court purportedly cannot exercise personal jurisdiction over the Individual Defendants.

As discussed *infra*, each of these arguments fails utterly because, *inter alia*: (i) there are numerous well-pled allegations in the Complaint that satisfy the second and third elements of the *Howey* test; (ii) ATB Coins are not "real" currency and thus not exempt from the federal securities laws; (iii) the Individual Defendants controlled ATB in all respects and orchestrated the ATB initial coin offering ("ATB ICO") and they are thus subject to primary liability as well as control person liability; and (iv) the Individual Defendants purposefully subjected themselves to

---

[1]   The term "MTD" as used herein refers to Defendants' Memorandum of Law in support of their Motion, Dkt. No. 31.

[2]   Citations to "Compl. ¶__" are to paragraphs of Plaintiff's Class Action Complaint for Violation of Sections 12(a)(1) and 15(a) of the Securities Act of 1933 (the "Complaint"), Dkt. No. 1.  The facts set forth in the Complaint are incorporated herein by reference.

jurisdiction in this forum when they operated within this District and actively solicited investments from U.S. persons.  Accordingly, Defendants' Motion to Dismiss should be denied in full.

## STATEMENT OF FACTS

Defendant ATB is a Delaware corporation founded on June 12, 2017, which claims to maintain its principal place of business at 40 Wall Street, 28th Floor, New York, NY 10005. Compl. ¶14.  Between approximately June 12, 2017 and approximately September 15, 2017, Defendants ran the ATB ICO during which time they received over $20 million in digital currency investments in exchange for "ATB Coins."  *Id.* ¶2.  The purported purpose of the ATB ICO was to raise capital to create and launch a new blockchain that would "deliver blazing fast, secure and near-zero cost payments to anyone in the world."[3]  Defendants claimed this network, which was to launch on September 1, 2017, would be "the fastest blockchain-based cryptographic network in the Milky Way galaxy."[4]  Throughout the ATB ICO, Defendants issued numerous press releases containing language such as "[i]nvest in the cryptocurrency of the future, while the project offers the most favorable terms!"[5]

The core offer during the ATB ICO was 1 ATB Coin for $1-$2.5 (depending on the date of investment), payable in Bitcoin ("BTC"), Ether ("ETH"), Litecoin ("LTC"), and potentially other cryptocurrencies.  Compl. ¶5.  The ATB ICO was a clear offer and sale of securities because,

---

[3]      *Id.* ¶3; ATB, *Whitepaper Revision 1.6*, at 2 (August 7, 2017) (Hereinafter, "Whitepaper 1.6"), attached as Exhibit 1 to the Declaration of Christopher J. Kupka ("Kupka Decl."). As Defendants note, the "court is permitted to consider the full contents of documents that were only partially quoted in the complaint." MTD at 9 (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996)).  Accordingly, this memorandum relies on the full contents of all documents and materials cited in the Complaint.

[4]      *Id.* (quoting Kupka Decl., Ex. 2).

[5]      *Id.* ¶4; ATB, *PR: Over 5,500 People Choose to Invest in ATB Coin* (Aug. 28, 2017) (hereinafter, "August 28 Press Release"), Kupka Decl., Ex. 3.

*inter alia*, Defendants touted, and Plaintiff and other ATB ICO investors reasonably expected, that the ATB Coins received in exchange for their investments would be worth more than the ETH, BTC and LTC, or other currencies, invested. *Id.* ¶6.

Defendants never filed a registration statement for the ICO with the United States Securities and Exchange Commission (the "SEC"). Compl. ¶¶1, 9, 51, 55–57. Hence, the ICO was completely unregistered at all times.

## ARGUMENT

## I.       STANDARDS OF LAW

### A.       Section 5 and Section 12(a)(1) of the Securities Act

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities Act. Section 5 of the Securities Act prohibits the offer or sale of unregistered securities. 15 U.S.C. § 77e. "The lynchpin of the [Securities] Act is its registration requirement." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1323 (2015).

Due to the varied and innumerable ways in which investors are likely to be manipulated and harmed absent the protections of the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. *See Pinter v. Dahl*, 486 U.S. 622, 638 (1988) ("The registration requirements are the heart of the [Securities] Act, and § 12[a](1) imposes strict liability for violating those requirements. Liability under § 12[a](1) is a particularly important enforcement tool, because in many instances a private suit is the only effective means of detecting and deterring a seller's wrongful failure to register securities before offering them for sale.") (citations omitted); *see also SEC v. Universal*

*Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) ("'[t]he Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part'") (citation omitted).

In order to plead a Section 5 violation and liability under Section 12(a)(1), a plaintiff must show that "(1) 'no registration statement was in effect as to the securities,' (2) 'the defendant[s] sold or offered to sell these securities,' and (3) 'there was a use of interstate transportation, or communication, or of the mails in connection with the sale or offer of sale.'" *SEC v. Carrillo Huttel LLP*, No. 13-cv-1735-GBD-JCF, 2017 U.S. Dist. LEXIS 6570, at *10–11 (S.D.N.Y. Jan. 17, 2017) (citing *SEC v. Cavanaugh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998), *aff'd*, 155 F.3d 129 (2d Cir. 1998)).

### B.    Standards of Law upon a Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 548 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *SEC v. Sayid*, No. 17-cv-2630-JFK, 2018 U.S. Dist. LEXIS 4670, at *9 (S.D.N.Y. Jan. 10, 2018) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)).  "On a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor." *Id.* (citing *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015)).

## II.   ATB COINS ARE INVESTMENT CONTRACT SECURITIES.

### A.   The *Howey* Standard Defines a Security.

Under Section 2(a)(1), 15 U.S.C. § 77b(a)(1), of the Securities Act, the definition of a "security" includes an "investment contract."  An investment contract is an investment of money in a common enterprise with a "reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."  *SEC v. Edwards*, 540 U.S. 389, 395 (2004) (internal quotation marks and citation omitted).  "This definition 'embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'"  *Id*. at 393 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)).

An application of the *Howey* test here demonstrates that the ATB Coins have been, at all relevant times, securities under the "investment contract" definition in Section 2(a)(1) of the Securities Act.  15 U.S.C. § 77b(a)(1); *Howey Co.*, 328 U.S. at 298-99.  Under *Howey*, an offering is an investment contract security if there is "(i) an investment of money; (2) in a common enterprise; (3) with the expectation of profits to be derived solely from the efforts of others." *Gugick v. Melville Capital, LLC*, No. 11-cv-6294-CS, 2014 U.S. Dist. LEXIS 12234, at *11 (S.D.N.Y. Jan. 31, 2014) (citing *Howey Co.*, 328 U.S. at 298–99).  As detailed below, each element of the *Howey* test is plainly met.  The ATB Coins were securities and the ATB ICO was never registered with the SEC, and the ATB ICO was therefore an offer and sale of unregistered securities.

Defendants contend that Plaintiff has failed to allege that the ATB Coins sold during the ATB ICO are "investment contract" securities because the allegations in the Complaint are purportedly insufficient to satisfy the second ("common enterprise") and third ("profits to be

derived solely from the efforts of others") elements of the *Howey* test.  MTD at 13.  As detailed below, Plaintiff clearly alleges facts sufficient to satisfy these elements.

**B.     Plaintiff and the Proposed Class Invested in a Common Enterprise.**

"In the Second Circuit, to establish the existence of a 'common enterprise,' a plaintiff must show **either** 'horizontal commonality' **or** 'strict vertical commonality.'"  *Gugick*, 2014 LEXIS 12234, at *11 (citing *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87–88 (2d Cir. 1994) (emphasis added)).  Here, Defendants claim that Plaintiff has failed to allege facts to support both horizontal and strict vertical commonality.  MTD at 14-17.  This is simply not true.  In reality, the Complaint has properly pled a myriad of facts clearly establishing both horizontal and vertical commonality, although only one or the other is required.

**1.     The Complaint Alleges Facts Sufficient to Establish Horizontal Commonality.**

**a.  The Complaint's Allegations**

"A common enterprise within the meaning of *Howey* can be established by a showing of 'horizontal commonality': the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits."  *Revak*, 18 F.3d at 87.

Defendants argue that "the funds contributed by any individual purchaser of ATB Coin are not alleged to have been pooled with other purchasers to share in the upside of ATB."  MTD at 15.  Similarly, Defendants claim that the "Complaint does not contain a single allegation tying the profits and losses of ATB Coin purchases with the success or failure of ATB."  *Id.* at 17.

Contrary to Defendants' contentions, the Complaint explicitly alleges:

Plaintiff and the Class were investing in a common enterprise with Defendants, as the **ATB ICO investments were pooled under the control of Defendant ATB**, and the success of the ATB Blockchain—and thus potential profits stemming from the future valuation of the ATB Coins—was entirely reliant on Defendants' actions.

Compl. ¶42 (emphasis added).  Thus, Plaintiff did indeed allege precisely what Defendants claim he failed to allege.

Rather than dispute the sufficiency of this allegation in the Complaint, Defendants have opted to completely ignore it, and have instead argued that ATB Coins are the equivalent of "gold or silver coins" and that their value "depended on market forces, independent of actions of Defendants or any third party."  MTD at 14–15.  This contention is implausible given the fact that ATB Coins would literally not exist were it not for Defendants' actions.  Compl. ¶¶43 ("it is obvious that any success from creating the ATB Coins or ATB Blockchain, as well as any future potential increases to the value of ATB Coin was, and continue to be, entirely dependent on Defendants' actions"), 56 ("any potential returns were entirely reliant on Defendants' ability to create the promised ATB Blockchain"); *see also Revak*, 18 F.3d at 87 ("'[h]orizontal commonality ties the fortunes of each investors in a pool of investors to the success of the overall venture'" (quoting *Hart v. Pulte Homes of Michigan Corp.*, 735 F.2d 1001, 1004 (6th Cir. 1984))).

Moreover, as alleged in the Complaint, "[a]s a practical matter, the value of ATB Coins was expected to rise from the speed of transactions on the ATB Blockchain that was promoted as 'the fastest blockchain-based cryptographic network in the Milky Way galaxy.'"  Compl. ¶42 (quoting Kupka Decl., Ex. 2).  Indeed, in Defendants' own words, "[t]he **cryptocurrency's capabilities and its future potential** has enabled it to raise $12 million . . . ."[6]  Simply stated, the existence and value of ATB Coins has at all times been entirely dependent on Defendants' actions and the anticipated success of ATB's blockchain ("ATB Blockchain").  This is explicitly and

---

[6]    *Id*. ¶2 (quoting ATB, *ATB Coin Cryptocurrency ICO Now Underway Across The Globe Company Offers Investors a Unique Opportunity* (June 13, 2017) (hereinafter "June 13 Press Release"), Kupka Decl. Ex. 4) (emphasis added).

emphatically pled in the Complaint.  *Id.* ¶3 ("[t]he purported primary purpose of the ATB ICO was to raise capital to **<u>create and launch</u>**" the ATB Blockchain (emphasis added)); *see also id.* ¶¶43 ("any success from **<u>creating the ATB Coins or ATB Blockchain</u>** . . . was, and continues to be, entirely dependent on Defendants' actions") (emphasis added), 56 ("the success of the investment and any potential returns on such were entirely reliant on Defendants' ability to create the promised ATB Blockchain") (emphasis added).

In short, Defendants have not bothered to address the Complaint's allegations concerning horizontal commonality.  Given the fact that the Complaint clearly alleges that Plaintiff and the proposed class' ("Class") funds were pooled under ATB's control and the value of ATB Coins has at all times been entirely reliant on Defendants' actions, Defendants' argument against a finding of horizontal commonality fails as a matter of law.  *See Sayid*, 2018 U.S. Dist. LEXIS 4670, at *9 ("[o]n a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor") (citing *Tsirelman*, 794 F.3d at 313).

### b.  Defendants' Distractions Are Irrelevant and Misleading.

Despite the foregoing, Defendants attempt to "distinguish" the facts in this case from analogous SEC actions referenced in the Complaint. MTD at 15–16 (discussing *Report of Investigation Pursuant to Section 21(a) of the Sec. Exch. Act of 1934: The DAO*, Exchange Act Release No. 81,207, 2017 WL 7184670 (July 25, 2017) and *Munchee Inc.*, Securities Act Release No. 10,445 (Dec. 11, 2017) (attached as Exhibits 5 and 6, respectively, to the Kupka Decl.)).

With respect to *The DAO*, Defendants argue that this case is distinguishable because "the Complaint does not allege that ATB Coin holders received any voting rights (which are commonly associated with common stock) and therefore ATB Coin holder [sic] did not share in any potential profits."  MTD at 16.  However, the fact that "voting rights" were not present has no bearing

whatsoever in determining whether ATB Coins constitute investment contract securities.  Indeed, as explained in the *The DAO* report, "[w]hether a particular transaction involves the offer and sale of a security—regardless of the terminology used—will depend on the facts and circumstances, including the economic realities of the transaction."  Kupka Decl., Ex. 5 at 17–18.  As alleged in the Complaint, "[h]ere, the economic realities are that Plaintiff and the Class invested ETH, BTC, and LTC in order to receive ATB Coins, which they were conditioned to expect would be worth more than their ETH, BTC, and LTC investment."  Compl. ¶38.  Voting rights are utterly irrelevant to these economic realities.

As relates to the *Munchee* action, Defendants argue that "the SEC found that investments in Munchee were used collectively to build an 'ecosystem,' revise a mobile application and build on the numbers of restaurants and users that participated on the Munchee app to sell food and write reviews, which purportedly would increase the value of Munchee Tokens."   MTD at 16.  Defendants then purport to conclude that *Munchee* is distinguishable because "[s]imilar facts do not exist with respect to ATB Coin."  *Id*.  However, the fact pattern in *Munchee* is highly analogous to the facts here.  That is, as alleged in the Complaint:

- The purported primary purpose of the ATB ICO was to raise capital to create and launch a new blockchain that would 'deliver blazing fast, secure and near-zero cost payments to anyone in the world';[7] and

- Defendants' July 9, 2017 press release claimed that 'ATB investors are serious people from many prosperous countries, they are interested in the development of the company, the growth of the rate and, of course, the profit, which as is known, will soon come to those who are 100% sure of the possibilities of cryptocurrency.'[8]

---

[7]     Compl. ¶3 (quoting Whitepaper 1.6, Kupka Decl., Ex. 1 at 2).

[8]     *Id*. ¶38 (quoting ATB, *Why You Should Invest in Tokens Issued on ICO* (July 9, 2017) (hereinafter "July 9 Press Release"), Kupka Decl., Ex. 7).

Here, Defendants conducted the ATB ICO to raise capital from Plaintiff and the Class to build the ATB Blockchain and create ATB Coins.  Compl. ¶3.  These new creations were supposed to enable extremely fast transactions leading to increased usage and, therefore, increased value of ATB Coins.  *Id.* ¶42.  Similarly, the funds raised in the *Munchee* ICO were to be used to build and improve upon an "ecosystem" which would lead to further adoption and increased value to the Munchee Tokens.  *See* Kupka Decl., Ex. 6 at 4-5; MTD at 16.  Hence, ATB Coins have at all relevant times been unregistered investment contract securities.

### 2. The Complaint Alleges Facts Sufficient to Establish Vertical Commonality.

"In an enterprise marked by vertical commonality, the investors' fortunes need not rise and fall together; a pro-rata sharing of profits and losses is not required. . . . 'Strict vertical commonality' requires that the fortunes of the investors be tied to the fortunes of the promoter.'" *Revak*, 18 F.3d at 87–88 (citing *Brodt v. Bache & Co., Inc.*, 595 F.2d 459, 461 (9th Cir. 1978)) (emphasis removed, citations omitted).

As stated in Defendants' June 29, 2017, press release, "the maximum tokens issued will be number 333 million, of which 50 million will be assigned to the Crowdfunding ICO."[9] Accordingly, Defendants still had, or have, 283 million ATB Coins to sell at a later date.   Hence, any rise or fall in the value of ATB Coins would clearly affect the fortunes of Defendants as well as the fortunes of Plaintiff and the Class.  Accordingly, strict vertical commonality is also plainly met. *See, e.g. Gugick*, 2014 U.S. Dist. LEXIS 12234, at *12–13 ("[s]trict vertical commonality requires that 'the fortunes of plaintiff and defendants are linked so that they rise and fall

---

[9]      Compl. ¶46 n. 25 (citing ATB, *Ongoing ATB ICO Raises over $14 Million in 2 Weeks from over 1000 Investors* (June 29, 2017) (hereinafter, "June 29 Press Release"), Kupka Decl., Ex. 8).

together.'") (quoting *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 205 F. Supp. 2d 243, 249 (S.D.N.Y. 2002)).

      **C.**    **Plaintiff and the Proposed Class Were Led to Expect Profits Solely from the Efforts of Defendants.**

      The third element of the *Howey* test is established when the investors have been "'led to expect profits solely from the efforts of the promoter or third party . . .'." *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008) (quoting *Howey Co.*, 328 U.S. at 298–99). The term "'solely' should not be construed as a literal" term; rather courts "'consider whether, under all the circumstances, the scheme was being promoted primarily as an investment . . . ." *Id.* (quoting *SEC v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 582 (2d Cir. 1982)). Here, investments in the ATB ICO were irrefutably promoted primarily as an investment. Furthermore, "any potential increases to the value of ATB Coin was, and continues to be, entirely dependent on Defendants' actions." Compl. ¶43. The following allegations, set forth *verbatim* in the Complaint, clearly establish this third element:

- As a practical matter, the value of ATB Coins was expected to rise from the speed of transactions on the ATB Blockchain that was promoted as 'the fastest blockchain-based cryptographic network in the Milky Way galaxy.' This speed was expected to permit instant transactions in cryptocurrencies and thus lead to mass adoption. Given that the ATB Blockchain is not capable of such feats and has generally not been adopted or successful, ATB Coins have minimal value.[10]

- Defendants issued a press release regarding the ATB ICO in which they proclaimed that '[n]ow every investor has the opportunity to become apart [sic] of the world technological evolution!'.[11]

- Defendants' July 9, 2017 press release claimed that 'ATB investors are serious people from many prosperous countries, they are interested in the development

---

[10]    *Id.* ¶42 (quoting Kupka Decl., Ex. 2).

[11]    Compl. ¶28 (quoting ATB, *ATB Coin Launches ICO on June 12* (June 12, 2017) (hereinafter "June 12 Press Release"), Kupka Decl., Ex. 9).

of the company, the growth of the rate and, of course, the profit, which as is known, will soon come to those who are 100% sure of the possibilities of cryptocurrency'.[12]

- Defendants' September 11, 2017 press release concluded with an exhortation to 'Grab the chance to invest in a very prospective project and change your life by filling it with new financial opportunities!'.[13]

- [E]ven after the ATB ICO had 'ended,' Defendants continued to solicit investments.  For example, the press release issued on September 11, 2017 included the following graphic:[14]



- 'As in any other financial / economic system, **the first users of ATB Coin can be compared to investors in a start-up, which can later acquire value, due to its usefulness and popularity**.  Thus, the acquisition of the first ATB Coin becomes a kind of **investment with long-term perspective**.'[15]

---

[12]     *Id.* ¶38 (quoting July 9 Press Release, Kupka Decl., Ex. 7).

[13]     *Id.* ¶38 (quoting ATB, *ATB Coin Accepts Investments until the Launch of the Working Network* (Sept. 11, 2017) (hereinafter "Sept. 11 Press Release"), Kupka Decl., Ex. 10).

[14]     *Id.* ¶34 (referencing Sept. 11 Press Release, Kupka Decl., Ex. 10).

[15]     *Id.* ¶39 (quoting ATB, F.A.Q.: How is the ATB Coin mining profit distributed? Is there a bonus for those who supported the project earlier than others? (hereinafter "ATB FAQ"), Kupka Decl., Ex. 11) (emphasis added).

- Moreover, updates Defendants have provided to participants in the ATB ICO since the ICO 'ended' begin with 'Dear Investors!'  For example, on September 20, 2017, Defendants issued an update which reach: 'Dear Investors! . . . it's just the beginning! ATB Coin plans to expand its presence on large and prospective crypto-exchange platforms, offering investors more opportunities to multiply their investments and use ATB Coin in everyday life.'[16]

Rather than address any of the foregoing allegations, Defendants blithely argue that "Plaintiff does not allege that investors relied[17] on any promised managerial efforts of ATB." MTD at 18, n. 5.[18]  Once again, this is simply not true.  Rather, the Complaint clearly pleads that Plaintiff and the putative Class were explicitly conditioned to expect the value of ATB Coins to rise due to Defendants' efforts to commercialize the ATB Blockchain and ATB Coins.[19]  Compl. ¶¶3, 34, 38–40, 42–43, 56.

---

[16]    *Id*. ¶40 (quoting ATB, *Localtrade.pro Exchange Provides Trading in ATB / BTC / ATB / USD Currency Pairs* (Sept. 20, 2017) (hereinafter "Sept. 20 Investor Update"), Kupka Decl., Ex. 12).  Clearly, not only were Defendants' efforts required to create and launch the ATB Blockchain and ATB Coins, but their efforts have continuously been necessary to "expand" by getting ATB Coins listed on more cryptocurrency exchanges (which is meant to increase the trading volume of the token, thereby increasing its value).

[17]    **Reliance is not even an element** of a claim under Section 12(a)(1) of the Securities Act. Rather, a violation of Section 12(a)(1) is shown where "(1) 'no registration statement was in effect as to the securities,' (2) 'the defendant[s] sold or offered to sell these securities,' and (3) 'there was a use of interstate transportation, or communication, or of the mails in connection with the sale or offer of sale.'" *Carrillo*, 2017 U.S. Dist. LEXIS 6570, at *10–11 (quoting *Cavanaugh*, 1 F. Supp. at 361).

[18]    Defendants also argue that "the Complaint does not allege that purchasers of ATB Coin were pooling their own activities and money with that of any contribution from ATB."  MTD Memo at 18.  However, the Complaint clearly alleges that the Individual Defendants invested or were expected to invest $10 million, collectively, in Defendant ATB and that investors funds were pooled under the control of Defendant ATB to run its business (build the ATB Blockchain, create ATB Coins, and improve thereon).  Compl. ¶¶3, 15–16, 42.  Accordingly, despite Defendants' claims to the contrary, the Complaint does allege that Defendants' funds were pooled with Plaintiff and the Class' funds.

[19]    Indeed, Defendants argue that the fact they marketed the ATB ICO as an investment opportunity is irrelevant because "'[t]he mere presence of a speculative motive on the part of the purchaser or seller does not constitute the existence of an 'investment contract' within the meaning

Defendants also attempt to analogize this case with "two similar cases" in the Ninth Circuit involving "gold coins and medallions and silver bars." MTD at 18. These cases involved precious metals. *Id*. Defendants argue that such cases are similar because "any expected return by purchasers of ATB Coin was based on supply and demand of the ATB Coin market and the variable uses of ATB Coin that were left to the skill of the purchasers themselves, including the decision of whether and at what price to exchange ATB Coin." *Id*. at 18–19. This argument and entire line of reasoning strains credulity because: (i) ATB Coins are obviously not precious metals; (ii) absent Defendants' "managerial efforts," ATB Coins would literally not exist (*see* Compl. ¶3); and (iii) Defendants' "managerial efforts" were, and are still, required to "expand" ATB, improve upon the ATB Blockchain, and get ATB Coins listed on more exchanges so that "investors" can have "more opportunities to multiply their investments . . . ." *Id*. ¶40 (quoting Sept. 20 Investor Update, Kupka Decl., Ex. 12).

Moreover, the notion that Plaintiff and the Class' freedom to decide when to sell their ATB Coins could ever constitute "significant investor control," *Leonard*, 529 F.3d at 85, is nonsensical. Simply put, in Defendants' own words: "**the first users of ATB Coin can be compared to investors in a start-up, which can later acquire value, due to its usefulness and popularity**." Compl. ¶39 (quoting ATB FAQ, Kupka Decl., Ex. 11) (emphasis added).

---

of the securities acts.'" *Id*. at 20 (quoting *Sinva v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F. Supp. 359, 366 (S.D.N.Y. 1966) (a case about futures contracts for sugar)). This is a bizarre argument given the fact that the plain language of the third element in the *Howey* test concerns whether the investors were "**led to expect profits**." *Leonard*, 529 F.3d at 88 (emphasis added). Moreover, Defendants were not merely "speculating" on potential profit to be made from investing in the ATB ICO. Rather, Defendants were urging potential investors to "[g]rab the change to invest in a very prospective project and **change your life by filling it with new financial opportunities!**" Compl. ¶38 (quoting Sept. 11 Press Release, Kupka Decl., Ex. 10).

Defendants next enter into a convoluted argument that ATB Coins are commodities,[20] and that Plaintiff's and the Class' dependence on Defendants' ability to create the promised ATB Blockchain is irrelevant because investors assumed the risk that the ATB Blockchain would never be created.  MTD at 19 (citing Compl. ¶56 and *Noa v. Key Futures, Inc.*, 638 F.2d 77, 80 (9th Cir. 1980)).  Defendants argue that such risk is analogous to the risk of delivery assumed by purchasers of futures contracts for precious metals.  However, this argument fails because ATB Coins would literally not exist but for Defendants' managerial efforts.  *See, e.g.*, Compl. ¶43 ("it is obvious that any success from creating the ATB Coins or ATB Blockchain, as well as any future potential increases to the value of ATB Coin was, and continues to be, entirely dependent on Defendants' actions").  Indeed, as acknowledged by Defendants, their actions have still been required to increase the value of ATB Coins, even after the ATB Blockchain was created: "Dear Investors! . . . it's just the beginning! **ATB Coin plans to expand** its presence on large and prospective crypto-exchange platforms, **offering investors more opportunities to multiply their investments** . . . ."  Compl. ¶40 (quoting Sept. 20 Investor Update, Kupka Decl., Ex. 12) (emphasis added).

---

[20]      Defendants state that the "Eastern District of New York has recently held that virtual currencies are commodities."  MTD at 19, n.8 (citing *Commodity Futures Trading Comm'n v. McDonnell*, No. 18-cv-361-JBW, 2018 U.S. Dist. LEXIS 36854 (E.D.N.Y. Mar. 6, 2018)).  Contrary to Defendants' contentions, the Eastern District did not hold that all "virtual currencies" are automatically "commodities," but rather that such "virtual currencies" "have some characteristics of government paper currency, commodities, and securities."  *Id*. at *7 (citation omitted).  Furthermore, as stated in the CFTC's primer on "virtual currencies" appended to *McDonnell*, "[t]here is no inconsistency between the SEC's analysis and the CFTC's determination that virtual currencies are commodities and that virtual tokens may be commodities or derivatives contracts depending on the particular circumstances."  *Id*. at *64.  In other words, Defendants' arguments regarding whether ATB Coins are "commodities" is wholly irrelevant, as the question before the Court is whether the elements of the *Howey* test are met, not whether ATB Coins are commodities.

**D.     ATB Coin Is Not a "Real" Currency.**

The Securities and Exchange Act of 1934 (the "Exchange Act") excludes the word "currency" from the definition of "security." MTD at 20 (citing 15 U.S.C. § 78(c)(a)(10)). Further, Courts have consistently held that, with respect to the definition of "security," the Securities Act and the Exchange Act have "essentially identical meaning[s]." *Id*. at 21 (citing *Edwards*, 540 U.S. at 393).

Defendants contend that "because ATB Coin is a currency, it cannot be treated as a security under the federal securities laws." MTD at 21. However, ATB Coins, and "virtual currencies," are not "real" currencies. As stated by the Commodity Futures Trading Commission:

> Bitcoin is a 'virtual currency,' defined here as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction. **Bitcoin and other virtual currencies are distinct from 'real' currencies**, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.

*In re Coinflip, Inc.*, CFTC No. 15-29, 2015 CFTC LEXIS 20, at *3 n. 2 (Sept. 17, 2015) (emphasis added).

Accordingly, ATB Coins are not exempt from the federal securities laws as a "currency." Furthermore, irrespective of this point, the question before this Court is not whether ATB Coins are a form of "currency" or even a "commodity." Rather, the question is whether the *Howey* test is satisfied, a test which "'embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" *Edwards*, 540 U.S. at 393 (quoting *Howey Co.*, 328 U.S. at 299). As detailed *supra* II.A–C, the *Howey* test is plainly met and ATB Coins are therefore, investment contract securities.

16

* * * *

In sum, irrespective of Defendants' attempts to characterize ATB Coins as "gold," "silver," a "commodity," or "currency," the economic substance of the transactions in the ATB ICO makes clear that such labels make no difference.  In analyzing whether a financial instrument is a security, "form should be disregarded for substance," *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967), "and the emphasis should be on the economic realities underlying a transaction, and not the name appended thereto."   *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975). Furthermore, despite Defendants' arguments that Plaintiff's allegations fall "woefully short" of the pleading requirements under Federal Rule of Civil Procedure 8 (*see* MTD at 20), the Complaint contains more than sufficient allegations supporting a strong (let alone plausible) claim to relief. *See Twombly*, 550 U.S. at 570 (holding that courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"); *see also Sayid*, 2018 U.S. Dist. LEXIS 4670, at *9 ("[a] claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'") (quoting *Matson*, 631 F.3d at 63); *id.* ("[o]n a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor") (citing *Tsirelman*, 794 F.3d at 313).

## III.   PLAINTIFF'S ALLEGATIONS THAT THE INDIVIDUAL DEFENDANTS ARE PRIMARILY LIABLE OR LIABLE AS CONTROL PERSONS ARE WELL PLED.

### A.   The Individual Defendants Are Primarily Liable.

Liability under Section 12(a)(1) extends to "the person who successfully solicits the purchase [of an unregistered security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Pinter*, 486 U.S. at 643; *see also SEC v. Tecumseh Holding Corp.*, No. 03-cv-5490-SAS, 2009 U.S. Dist. LEXIS 119869, at *8 (S.D.N.Y.

Dec. 22, 2009) (stating that liability for violations of Section 5, and thus Section 12(a)(1), also extends to "[a]ny person who 'engaged in steps necessary to the distribution' of the unregistered security'" (quoting *SEC v. Chinese Consol. Benev. Ass'n, Inc.*, 120 F.2d 738, 741 (2d Cir. 1941)).

Defendants argue that "[t]here are no allegations that Ng and Hoover passed title of ATB Coin to any purchasers and no allegations that they actively solicited the sale or offer of sale to purchasers." MTD at 22. Once again, Defendants ignore the plain allegations in the Complaint. For example, the Complaint alleges that the Individual Defendants are the co-founders of ATB (a company created to run the ATB ICO), Compl. ¶¶14–16, which obviously means they "engaged in steps necessary" to accomplish the ATB ICO. *Tecumseh*, 2009 U.S. Dist. LEXIS 119868, at *8.

Additionally, the Complaint contains quotes from Defendant Ng that were included in a press release touting the ATB ICO. Compl. ¶¶2, 46 (quoting June 29 Press Release, Kupka Decl., Ex. 8). This same press release stated:

> According to CEO Edward Ng, the company's technologically revolutionary cryptocurrency has already attracted excited investors from the United States, Canada, and China. Edward Ng further elaborated the company is pleased with such a high level of interest and optimism from investors; adding that the ICO will be ongoing for the next four weeks, with a targeted amount of $50 million.

*Id*. In this press release, Defendant Ng was clearly soliciting investments in the ATB ICO as he claimed that ATB Coin is a "revolutionary cryptocurrency," stated for how long the ICO would purportedly be open, and even stated the target amount that ATB was hoping to collect. *Id.* Similarly, this press release includes a quote from Defendant Hoover: "Our team is well-positioned to move forward with our intermediate goal of opening offices across the U.S., Canada, Latin America, and Asia." *Id.* Furthermore, this same press release contains an embedded video of the

Individual Defendants at a conference in New York announcing the "launch" of ATB Coins.  *Id*.[21]

This video begins with Defendant Hoover stating: "I'd like to welcome you all to our North American launch of ATB Coin.  Indeed, the new evolution of cryptocurrency."  *Id*. at 0:01–09.

Additionally, the video has portions of Defendant Ng's speech during the conference:

> This is a new technology.  We have a solid company behind it.  We're going to go beyond micropayment, into local market, international market.  The next phase is called cross-border payment.  We take care [of] all the problems that you would deal with, with the currency exchange, with the consistency of the [e-wallet?], **that's our job, alright.  You just enjoy the benefit of it**.

*Id*. at 0:35–54 (emphasis added).

Further, the Complaint cites, and provides hyperlinks to, two (2) additional videos of Defendant Hoover explaining his qualifications and marketing the ATB ICO.  Compl. ¶¶16, 36. In the second video, Compl. ¶36,[22] Defendant Hoover touts the ATB ICO and ATB Coin as follows:

> The basic idea of ATB Coin, is to integrate all existing payment systems into a single electronic wallet, with a simple and effective algorithm, create the global currency that will be safe, innovative, and easy to use as well as available around the world, meeting all user needs.  Thus, **ATB Coin can replace all existing payment methods and currencies and become the universal financial instrument**.  **"Utopia," you might say**.  Everyone knows that my grandfather created the vacuum cleaner.  The vacuum cleaner was also once a fantasy as well as thousands of other convenient and practical inventions that you use almost every day.

*Id*. at 2:09–54 (emphasis added).

> Try to understand right now, you are witnessing a new round of financial development.  **With or without you, this future is coming**.  I am sure that the potential of all persons is very huge and therefore **I'm sharing with you, just starting with you, just enter into this new world with me**, and look at the

---

[21]    The video, which was from a press conference that took place in New York on June 18, 2017, can be viewed at https://bitcoinprbuzz.com/press-release-atb-coin-ico/.

[22]    This video, entitled "Interview with Herbert W. Hoover. ATB Coin," was uploaded on June 7, 2017 and can be viewed at https://www.youtube.com/watch?v=oXU3PljUl5E.

prospects from different angles.  And **<u>do not be pessimistic</u>**. Forget about standard solutions.  Think outside the box, that's how I see our financial future and **<u>I don't want you to miss the chance to become part of it</u>**.  The ATB Coin project is presented by a crowdfunding and **<u>everyone can invest</u>** in it and support our developers.  Right now, your prosperous future depends on your own thoughtful decisions.  Thank you.

*Id*. at 4:11–5:00 (emphasis added).

In sum, there are ample allegations in the Complaint supporting a "plausible" claim that the Individual Defendants are directly liable for offering and selling unregistered securities in connection with the ATB ICO.  *See, e.g.*, *Pinter*, 486 U.S. at 643 (stating that Section 12(a)(1) liability extends to "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner"); *Tecumseh*, 2009 U.S. Dist. LEXIS 119869, at *8.

### B.     The Individual Defendants Are Subject to Control Person Liability.

Liability under Section 15(a) of the Securities Act requires an underlying violation of the Securities Act.  To state a claim under Section 15(a), a plaintiff must allege "'(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator.'"  *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 387 (S.D.N.Y. 2007) (citing *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).  Plaintiff "is not required to allege culpable participation by the controlling person in order to state a claim under section 15."  *Id*. (citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2007)).

First, as discussed at length, Plaintiff has properly pled his Section 12(a)(1) claim.  *See* Section II, *supra*.  Accordingly, the first element of a Section 15(a) claim is well-established here.

Second, while Defendants argue that Plaintiff has failed to properly allege the Individual Defendants' control over ATB, and that Plaintiff's Complaint merely provides "conclusory" allegations, MTD at 23, nothing could be further from the truth.  Rather, in addition to the

numerous allegations set forth, *supra*, that establish the Individual Defendants' liability as primary violators—each of which also supports Plaintiff's control person allegations—the Complaint is replete with specific allegations concerning the Individual Defendants' active roles in the ATB ICO and ATB's business.

For example, the Individual Defendants are the co-founders and owners of ATB and such "ownership interest in and control over Defendant ATB" is sufficient to find liability under Section 15(a).  Compl. ¶¶15–16, 59; *see generally In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (defining "control" as "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the **ownership of voting securities, by contract, or otherwise**") (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996)) (emphasis added).  Additionally, it is entirely reasonable to infer that the Individual Defendants personally orchestrated the ATB ICO based on the fact that Defendants announced the ATB ICO on June 6, 2017, Compl. ¶32, and the fact that ATB was not incorporated until June 12, 2017.  *Id*. ¶¶14–16; ATB's Limited Liability Company Agreement (hereinafter, "ATB LLC Agreement"), Kupka Decl., Ex. 13.  Moreover, ATB's LLC Agreement states that the only two members are Defendant Ng and Defendant Hoover.  *Id*. at 3.  Accordingly, it is entirely plausible to allege that the Individual Defendants "had the power to influence and control, and did influence and control, directly or indirectly, the decision making relating to the ATB ICO, including the decision to engage in the sale of unregistered securities via the ATB ICO."  Compl. ¶59; *see generally Sayid*, 2018 U.S. Dist. LEXIS 4670, at *9  ("[o]n a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor") (citing *Tsirelman*, 794 F.3d at 313).

## IV.   PLAINTIFF HAS ESTABLISHED PERSONAL JURSIDICTION OVER THE INDIVIDUAL DEFENDANTS.

### A.   Legal Standards Concerning Personal Jurisdiction

"Personal jurisdiction under the federal securities laws is measured by the limits of the Fifth Amendment Due Process Clause." *Shanahan v. Vallat*, No. 03-cv-3496-MBM, 2004 U.S. Dist. LEXIS 25523, at *23 (S.D.N.Y. Dec. 19, 2004) (citing *SEC v. Softpoint, Inc.*, No. 95-cv-2951-GEL, 2001 U.S. Dist. LEXIS 286, at *6–7 (S.D.N.Y. Jan. 17, 2001)). "The due process test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry.  The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Oneida Sav. Bank v. Uni-Ter Underwriting Mgmt. Corp.*, No. 13-cv-746-MAD-ATB, 2014 U.S. Dist. LEXIS 130677, at *51 (S.D.N.Y. Sept. 18, 2014) (citing *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).  "When personal jurisdiction is assessed under a federal statute, minimum contacts are to be examined between defendants and the forum nation, rather than between defendants and the forum state." *Shanahan*, 2004 U.S. Dist. LEXIS 25523, at *24.  "'If such contacts are found, the court may assert personal jurisdiction so long as 'it is reasonable [to do so] under the circumstances of the particular case.'" *Oneida*, 2014 U.S. Dist. LEXIS 130677, at *52 (citation omitted).

Defendants argue that the "minimum contacts" requirement has not been established under either a general or specific theory of jurisdiction.  MTD at 23–26.  As discussed below, here, specific jurisdiction is clearly met and therefore, Defendants are subject to personal jurisdiction.[23]

---

[23]   Defendants do not contest the "reasonableness" requirement and thus, this prong is not addressed herein.

**B.     The Individual Defendants Are Subject to Specific Jurisdiction.**

"A court may exercise '[s]pecific jurisdiction' where a suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  *SEC v. Straub*, No. 11-cv-9645-RJS, 2016 U.S. Dist. LEXIS 136841, at *21 (S.D.N.Y. Sept. 30, 2016) (quoting *Metro Life Ins.*, 84 F.3d at 567-68); *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) ("[s]pecific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum'") (citation omitted).  "'The crucial question' under the due process analysis 'is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there.'"  *Straub*, 2016 U.S. Dist. LEXIS 136841, at *21–22 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007)).

Here, purposeful availment is beyond reasonable dispute.  The following facts and allegations plainly establish that Defendants are subject to this Court's jurisdiction:[24]

- Defendants Ng and Hoover presented at a "live conference" discussing the ATB Coin from New York on June 8, 2017;[25]

- Defendants Ng and Hoover were the sole members of ATB, which was created on June 12, 2017.  Compl. ¶¶14–16;[26]

---

[24]    "On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still 'resolving all doubts in [plaintiff's] favor.'"  *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n. 1 (S.D.N.Y. 2013) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).

[25]    ATB, Open broadcast from the main conference hall in New York – "ATB Coin – the cryptocurrency world's technical evolution" has finished (June 8, 2017), Kupka Decl., Ex. 14.

[26]    Compl. ¶¶14–16, ATB LLC Agreement, Kupka Decl., Ex. 13.

- The letter Defendant Ng received enclosing the certificate of formation for ATBCOIN LLC was address to him at 8 S Mountain Rd, Millburn, NJ 07041;[27]

- ATB's "principal place of business in its LLC Agreement is listed as 64 Fulton St, Suite 603, New York, NY 10038-2753;[28]

- According to the ATB LLC Agreement, "Notices" to Defendants Ng and Hoover are to be addressed to 64, Fulton St., Suite 603, New York, NY 10038-2753;[29]

- On June 6, 2017, Defendants issued a press release stating "[u]nlike others, ATB Coin is not shrouded in mystery and crypto-complexity! They are in-the-flesh company executives and technical staffers **here in New York** ready to answer any and all questions . . . ATB Coin co-founder **Herbert W. Hoover** III is a member of America's iconic manufacturing family. An army veteran and Georgetown MBA, his extensive business career has included stints on Wall Street and commercial real estate investing. **He resides in New York** and travels worldwide;[30]

- On June 13, 2017, Defendants issued a press release from "New York, NY" including quotes from both Defendant Ng and Defendant Hoover.[31]

- On June 18, 2018, the Individual Defendants delivered an ATB Coin "presentation" in New York, NY;[32]

---

[27]   Letter *Re: Formation of ATBCOIN LLC* (June 12, 2017), Kupka Decl., Ex. 15.

[28]   Compl. ¶¶14–16; ATB LLC Agreement, Kupka Decl., Ex. 14 at 2.

[29]   *Id*. at 18.

[30]   ATB, *AiTiBiCoin Press Conference – Thursday, June 8* (June 6, 2017) (hereinafter, "June 6 Press Release"), Kupka Decl., Ex. 16. (emphasis added).

Defendant Hoover has submitted a declaration, Dkt. No. 29, claiming that he "has not resided in the United States since 1998."  However, Defendants' own press release states that Defendant Hoover resided in New York as of June 2017.  "Even where, as here, the defendant has challenged the plaintiffs' factual allegations of jurisdiction, 'the court may provisionally accept disputed factual allegations as true.  In making such a ruling, the court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose."  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 397–98 (S.D.N.Y. 2005).  Here, based on Defendants' press release, Plaintiff alleges that Defendant Hoover resided in New York as of June 2017, which if accepted as true, plainly establishes personal jurisdiction (whether general or specific).

[31]   June 13 Press Release, Kupka Decl., Ex. 4.

[32]   June 29 Press Release, Kupka Decl., Ex. 8; Note 21, *supra*.

- **According to CEO Edward Ng**, the company's technologically revolutionary cryptocurrency has **already attracted excited investors from the United States**, Canada, and China.  Edward Ng further elaborated the company is pleased with such a high level of interest and optimism from investors; adding that the ICO will be ongoing for the next four weeks, with a targeted amount of $50 million;[33] and

- On September 14, 2017, Defendant Hoover participated in a conference "dedicated to blockchain technologies" on behalf of ATB in San Francisco, CA.[34]

Indeed, Defendants **Hoover and Ng were both personally present at the Marriott Marquis hotel in New York City** – within this very District – to promote ATB Coin's ICO.  *See* ¶ 46, June 29 Press Release, Kupka Decl., Ex. 8, and Note 21, *supra*.  Based on the foregoing, it is clear that Defendants "knew or had good reason to know that [their] conduct would have effects" in this forum nation.  *Parmalat*, 376 F. Supp. at 455.  Accordingly, at this stage, Plaintiff has satisfied his burden to plead personal jurisdiction over Defendant Ng and Defendant Hoover.  *See, e.g.*, *id.* at 452 ("[w]here, as here, no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction 'by pleading in good faith, *see* Fed.R.Civ.P. 11, legally sufficient allegations of jurisdiction'") (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants Motion to Dismiss in full.

*[Signatures on Following Page]*

---

[33]    *Id.* (emphasis added).

[34]    ATB, *CoinAlts Fund Symposium* (Sept. 17, 2017), Kupka Decl., Ex. 17.

Dated: April 27, 2018                              Respectfully submitted,

                                                    **LEVI & KORSINSKY, LLP**

                                                    /s/ *Christopher J. Kupka*
Donald J. Enright                                   Christopher J. Kupka (CK-9010)
Elizabeth K. Tripodi                                Eduard Korsinsky
John A. Carriel                                     30 Broad Street, 24th Floor
1101 30th Street, N.W., Suite 115                   New York, New York 10004
Washington, DC 20007                                Telephone: (212) 363-7500
Telephone: (202) 524-4290                           Facsimile: (212) 363-7171
Fax: (202) 333-2121

*Attorneys for Plaintiff Raymond Balestra*