**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAYMOND BALESTRA, Individually and on Behalf of All Others Similarly Situated, | C.A. No 1:17-cv-10001 |
| Plaintiff, | Hon. Vernon S. Broderick |
| v. | <u>CLASS ACTION</u> |
| ATBCOIN LLC, EDWARD NG, HERBERT W HOOVER, | |
| Defendants. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**</u>
<u>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**</u>
<u>**PROPOSED CLASS ACTION SETTLEMENT**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

ARGUMENT ...................................................................................................................... 5

I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 5

   A.   Standards for Preliminary Approval of a Proposed Class Action Settlement ............... 5

   B.   Rule 23(e)(2)(A): Zealous Representation.................................................................. 6

   C.   Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-
   Length Negotiations by Experienced Counsel................................................................. 7

   D.   Rule 23(e)(2)(C): The Settlement Provides Significant Benefits .................................. 8

      1.   Despite Strong Claims, Many Risks to Obtaining a Recovery Remained................. 9

      2.   The Claims Processing and Distribution Process is Effective ................................. 12

      3.   The Settlement Does Not Excessively Compensate Lead Counsel .......................... 13

   E.   Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One
   Another ......................................................................................................................... 14

II.   PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 15

   A.   The Settlement Class Meets the Requirements of Rule 23(a) ..................................... 16

      1.   Rule 23(a): Numerosity.......................................................................................... 16

      2.   Rule 23(a)(2): Questions of Law or Fact Are Common ........................................... 16

      3.   Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ................................................ 17

      4.   Rule 23(a)(4): The Lead Plaintiff is Adequate ....................................................... 18

   B.   The Requirements of Rule 23(b)(3) Are Satisfied..................................................... 19

1.  Common Legal and Factual Questions Predominate ................................................. 19

2.  A Class Action Is Superior to Other Methods of Adjudication ............................... 20

III.  THE PROPOSED CLASS IS ASCERTAINABLE AND THE NOTICE PROGRAM
      SHOULD BE APPROVED .................................................................................. 21

  A.  The Proposed Class is Ascertainable ........................................................... 21

  B.  The Proposed Notice is Appropriate and Should Be Approved ................... 22

IV.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..................... 25

CONCLUSION ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amchem Prods,. Inc. v. Windsor,*

   521 U.S. 591 (1997).....................................................................................................19

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*

   568 U.S. 455 (2013).....................................................................................................20

*Arbuthnot v. Pierson,*

   607 F. App'x 73 (2d Cir. 2015)....................................................................................13

*Audet v. Fraser,*

   332 F.R.D. 53 (D. Conn. 2019).....................................................................................22

*Audet v. Fraser*,

   No. 3:16-cv-0940 (MPS), 2019 U.S. Dist. LEXIS 104195 (D. Conn. June 21, 2019)............22

*Bourlas v. Davis Law Assocs.*,

   237 F.R.D. 345 (E.D.N.Y. 2006)...................................................................................16

*Brecher v. Republic of Argentina*,

   806 F.3d 22 (2d Cir. 2015)............................................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,

   504 F.3d 229 (2d Cir. 2007)..........................................................................................17

*Charron v. Pinnacle Grp. N.Y. LLC*,

   874 F. Supp. 2d 179 (S.D.N.Y. 2012)..............................................................................9

*City of Providence v. Aeropostale, Inc.,*

   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)..........................13

*Consol. Rail* Corp. *v. Town of Hyde Park,*

    47 F.3d 473 (2d Cir. 1995)..................................................................... 16

*Corpac v. Rubin & Rothman, Ltd. Liab. Co.,*

    920 F. Supp. 2d 345 (E.D.N.Y. 2013) .................................................. 24

*Ferrick v. Diable,*

    No. 18-1702, 2018 WL 6431410 at *3 (2d Cir. Oct. 9, 2018)................. 25

*Granada Invs., Inc. v. DWG Corp.,*

    962 F.2d 1203 (6th Cir. 1992) ............................................................. 10

*In re "Agent Orange" Product Liability Litigation,*

    597 F.Supp. 740 (E.D.N.Y.1984) ......................................................... 10

*In re Advanced Battery Techs. Inc. Sec. Litig.,*

    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................... 8, 9

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*

    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................. 10

*In re Am. Int'l Grp., Inc. Sec. Litig.,*

    293 F.R.D. 459 (S.D.N.Y. 2013) .......................................................... 5

*In re Bank of Am. Corp. Sec, Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.,*

    281 F.R.D. 134 (S.D.N.Y. 2012) ........................................................ 21

*In re Citigroup Inc. Bond Litig.,*

    296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................... 5

*In re Drexel Burnham Lambert Grp., Inc.,*

    960 F.2d 285 (2d Cir. 1992)................................................................ 18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*

312 F.R.D. 332 (S.D.N.Y. 2015) ......................................................................... 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,

279 F.R.D. 151 (S.D.N.Y. 2001) ......................................................................... 13

*In re Glob. Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 11

*In re GSE Bonds Antitrust Litig.*,

414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,

243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................. 7

*In re Initial Pub. Offering Sec. Litig.*,

260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................... 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,

299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................. 21

*In re Marsh & McLennan Cos., Sec. Litig.*,

No. 04 civ 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................ 17

*In re Merrill Lynch Tyco Research Sec. Litig.*,

249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................... 14

*In re Metlife Demutualization Litig.*,

689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................... 9

*In re MF Glob. Holdings Ltd. Inv. Litig.*,

310 F.R.D. 230 (S.D.N.Y. 2015) ......................................................................... 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,

176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................. 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,

    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................... 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................... 1

*In re Petrobras Sec.*,

    862 F.3d 250, (2d Cir. 2017).................................................... 21

*In re Platinum & Palladium Commodities Litig.*,

    No. 10 cv 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................... 7

*In re Polaroid ERISA Litig.*,

    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................... 18

*In re Priceline.com, Inc. Sec. Litig.*,

    No. 3:00CV1884AVC, 2007 WL 2115592 (D. Conn. July 20, 2007) .............. 11

*In re Sadia, S.A. Sec. Litig.*,

    269 F.R.D. 298 (S.D.N.Y. 2010) ................................................... 16

*In re Schering-Plough Corp. Sec. Litig.*,

    No. 01-CV-0829 (KSH/MF), 2009 WL 5218066 (D.N.J. Dec. 31, 2009) ............ 12

*In re Synthroid Mktg. Litig*,

    264 F.3d 712 (7th Cir. 2001) ................................................... 10

*In re Twinlab Corp. Sec. Litig.*,

    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................... 18

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*,

    718 F. Supp. 1099 (S.D.N.Y. 1989)................................................... 10

*In re Vivendi Univ., S.A. Sec. Litig.*,

    242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................... 16, 24

*Lizondro-Garcia v. Kefi LLC*,

    300 F.R.D. 169 (S.D.N.Y. 2014) ............................................................... 7

*Lomeli v. Sec. & Inv. Co. Bahrain*,

    546 F. App'x. 37 (2d Cir. 2013) ............................................................. 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950) ................................................................................ 23

*Priddy v. Edelman*,

    883 F.2d 438 (6th Cir.1989) ................................................................... 10

*Roach v. T.L. Cannon Corp.*,

    778 F.3d 401 (2d Cir. 2015) ................................................................... 19

*Robidoux v. Celani*,

    987 F.2d 931 (2d Cir. 1993) ................................................................... 17

*Shapiro v. JPMorgan Chase & Co.*,

    No. 11 Civ8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............. 18

*Stinson v. City of New York*,

    282 F.R.D. 360 (S.D.N.Y.2012) ............................................................ 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

    396 F.3d 96 (2d Cir. 2005) .................................................................. 5, 23

*Weinberger v. Kendrick*,

    698 F.2d 61 (2d Cir. 1982) ..................................................................... 15

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d
  1079 (2d Cir. 1971) .................................................................................................. 10

*Yang v. Focus Media Holding Ltd.,*
  No. 11-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ....................................... 5

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................................................... 16

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 20

Fed. R. Civ. P. 23(c)(2) ................................................................................................. 23

Fed. R. Civ. P. 23(e)(2) .............................................................................................. 5, 6

**PRELIMINARY STATEMENT**

Raymond Balestra ("Balestra" or "Lead Plaintiff"), on behalf of himself and the proposed settlement class, submits this memorandum of law in support of the accompanying unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned litigation (the "Action"). On April 6, 2020, ATBCOIN, LLC ("ATB"), Edward Ng ("Ng"), and Herbert W. Hoover ("Hoover" and together with ATB and Ng, "Defendants") and Lead Plaintiff entered into the Stipulation and Agreement of Settlement (the "Stipulation," filed herewith as Exhibit 1 to the Declaration of Donald J. Enright (the "Enright Decl.")) to resolve the Action. For the purposes of this memorandum, any terms not defined shall have the same meanings as set forth in the Stipulation.

The Settlement provides a recovery of $250,000 in cash to resolve this Action's claims against Defendants. Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval because it is the result of vigorous arm's-length negotiations by experienced counsel, represents a favorable recovery that falls well within the range of possible approval, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Preliminary approval is, therefore, appropriate. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

Upon a grant of preliminary approval of the Settlement, Lead Plaintiff will be permitted to provide notice of the Settlement's terms and conditions to potential members of the Settlement Class. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order (attached to the Declaration of Donald J. Enright as Exhibit A) will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement; (iii) approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), the Summary Notice of Proposed Class Action Settlement ("Summary Notice"), and Proof of Claim Form ("Claim Form") attached as Exhibits A-1, A-2 and A-3 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice provided in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiffs pursuant to the PSLRA; and (vi) appoint Strategic Claims Services as the claims administrator to administer the Settlement process.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On December 21, 2017, Raymond Balestra filed a Class Action Complaint for Violation of the Federal Securities Laws, captioned *Balestra v. ATBCOIN LLC, et. al.,* Case No. 1:17-cv-10001 in the United States District Court for the Southern District of New York, asserting claims under Sections 12(a)(1) and 15(a), 15 U.S.C.  §§77l(a)(1) and 77o(a) of the Securities Act of 1933 (the "Securities Act") against ATB, Ng, and Hoover (the "Complaint). [ECF No. 1].

2

On March 12, Plaintiffs moved to appoint Balestra as Lead Plaintiff and Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel. [ECF No. 22]. On March 27, 2018, Defendants filed a notice of non-opposition to the appointment of Balestra as Lead Plaintiff. [ECF No. 26]. On April 13, 2018, Defendants filed their motion to dismiss. [ECF No. 27]. On March 31, 2019, this Court granted Plaintiffs' motion to appoint Balestra as Lead Plaintiff, and denied Defendants' Motion to Dismiss. [ECF No. 42]. On April 6, 2019, Defendants filed their formal answer to Plaintiffs' complaint. [ECF No. 45].

On December 11, 2019, this Court issued an order governing the procedures to govern the handling of confidential discovery material. [ECF No. 56].

From December 21, 2017 through October 24, 2019, Lead Plaintiff, through counsel, diligently investigated the claims against the Defendants including analyzing publicly-filed documents and investigative reports, and publicly released statements concerning ATBCoin.

After Plaintiffs' motion to appoint Balestra as Lead Plaintiff and Levi & Korsinsky as Lead Counsel was granted, and after Defendants' motion to dismiss was denied, Lead Counsel and Defendants' Counsel commenced a dialogue to discuss the procedural posture of this Action, forthcoming pleadings, and the Parties' initial positions concerning the merits and strength of the allegations and potential defenses. Enright Decl*., at ¶8. During the months that followed counsel for the Parties continued to undertake meaningful discussions of their views of the merits, strength, and risks concerning this Action. *Id*.

Lead Counsel investigated the defenses that Defendants' Counsel discussed during its calls and also investigated Defendants' ability to fund any judgment or settlement. *Id.* at ¶9. From this research, Lead Counsel concluded that the immediate benefit of a cash recovery for the Class was in the Class' best interest. Foremost among these considerations was the risk that no recovery or a

smaller recovery might be achieved following further litigation. In short, Plaintiff's investigation indicated that the named Defendants were essentially judgment-proof, and securing any recovery, even if a judgment was obtained, appeared very likely to be difficult or impossible.  Moreover, even if the case advanced to trial, Lead Plaintiff would face the risk of losing at trial and the risk that a Class might not be certified, as well as the risk of likely appeals which could last one or more additional years. For the Defendants (who deny all allegations of liability and deny that any Class Members were damaged), the principal reason for the Settlement is to eliminate the burden, expense, uncertainty, and risk of further litigation.

Thereafter, Defendants' Counsel and Lead Counsel explored the possibility of finding an amicable resolution of the Action. *Id.* at ¶10.  During the weeks that followed, negotiations ensued between the Parties that resulted in an agreement in principle to resolve the claims against Defendants in this Action on October 23, 2019. *Id.*

Following the parties' entry into the agreement in principle, Defendants provided Lead Plaintiff and Lead Counsel with documents relevant to the settlement of this Action (the "Confirmatory Discovery").  *Id*. at ¶11.  Under the circumstances, Lead Plaintiff and Lead Counsel believed that such production constituted reasonable discovery to allow Lead Plaintiff and Lead Counsel to evaluate the fairness, reasonability and adequacy of the Settlement. *Id*. Specifically, this discovery confirmed that the Defendants are judgment proof, and that the Settlement provides the best reasonably conceivable recovery from them.

To memorialize the agreement in principle, the Parties subsequently negotiated the Stipulation. *Id.* at ¶12. The Stipulation, which sets forth the final terms and conditions of the Settlement, includes, among other things, a release of all claims asserted against Defendants in the

Action in return for a cash payment by the Defendants in the amount of $250,000 into a Settlement Fund for the benefit of the Settlement Class.

In light of the significant risks of proceeding with further litigation, including the inability of Defendants to later pay for any settlement or satisfy any judgment, Lead Plaintiff and Lead Counsel determined that the proposed Settlement represents the best reasonably possible result for the Settlement Class. *Id.* at ¶13.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.   Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of class action litigation. *See Yang v. Focus Media Holding Ltd.,* No. 11-9051, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]) (All internal quotations and citations are omitted unless otherwise noted.)" This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(c) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013). District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th Ed. 2015). The first

step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id*. at §13:13.

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2) and certify the class. Rule 23(e)(1)(B). Rule 23 was previously silent as to how courts were to evaluate whether a proposed settlement was fair, adequate, and reasonable, but with the recent amendment, Rule 23(e)(2) now provides that a court may approve a proposed settlement that would bind class members only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (a) class representatives and counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Rule 23 amendment has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable. Rule 23(e)(2), rather, only requires that the district court's ultimate determination will necessarily involve a consideration of these enumerated factors.

### B.       Rule 23(e)(2)(A): Zealous Representation

Lead Plaintiff and Lead Counsel have zealously prosecuted this action on behalf of the Class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. Plaintiff filed the complaint, sought appointment as Lead

Plaintiff, survived Defendants' motion to dismiss, and has overseen counsel during the course of Lead Counsel's investigation and negotiations with Defendants. *See* Enright Decl., ¶¶3-5.  Lead Counsel likewise pursued aggressive litigation that resulted in this Settlement. *Id* at ¶¶6-7. Lead Counsel also evaluated the Confirmatory Discovery, the financial position of Defendants and the attendant risks to the Action, and negotiated vigorously to secure the recovery for the Class. *Id.* at 9. Lead Plaintiff was consulted on the terms of the Settlement and has expressed his support and continued willingness to protect the Class. *Id* at ¶¶9-10; Balestra's Declaration in Support of Its Unopposed Motion for Preliminary Approval ("Balestra Decl."), ¶¶9-10.  Accordingly, the Class has been, and remains, well represented.

### C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *accord, In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007). As such, in considering preliminary approval, a court looks to both the "negotiating process leading up to the settlement, *i.e.,* procedural fairness, as well as the settlement's substantive terms, *i.e.,* substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (citation and internal quotations omitted). Thus, "[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citation omitted).

A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). The Settlement is entitled to this presumption because it was achieved after thorough arm's-length negotiations by well-informed and experienced counsel—on both sides[1]—who exchanged fulsome mediation statements and were knowledgeable about the strengths and weaknesses of the case prior to finalizing the Stipulation. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").

Here, Lead Plaintiff is represented by Levi & Korsinsky, LLP, an experienced and skilled firm in securities class litigation. Levi & Korsinsky, LLP has a long and successful track record in such cases *See* Enright Decl., Ex. A (firm resume of Lead Counsel). Lead Counsel believes that the achieved Settlement is an excellent result for the Class given the attendant risks in the ongoing litigation and recommends that the Settlement be preliminarily approved. *Id.* at ¶¶14–16.

Second, Lead Plaintiff and Lead Counsel only agreed to the Settlement after multiple discussions with Defendants' Counsel regarding each parties' respective positions, and Lead Counsel's own investigation into the merits and risks to the Action based on these discussions. *Id.* at ¶¶8–13. Furthermore, Lead Plaintiff and Lead Counsel only agreed to the Settlement after an investigation of Defendant's ability to fund any judgment or settlement based on their current financial position and thorough review of the Confirmatory Discovery. *Id.* Thus, the procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting approval.

**D.     Rule 23(e)(2)(C): The Settlement Provides Significant Benefits**

---

[1] Defendants were represented by attorneys from the sophisticated law firm Reitler Kailas & Rosenblattt, LLC.

### 1. Despite Strong Claims, Many Risks to Obtaining a Recovery Remained

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants would advance several substantial arguments concerning liability and damages. Indeed, pursuing the Settlement Class' claims through class certification, summary judgment, trial, and appeals would pose significant risks. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D. at 177.

With respect to liability, Lead Plaintiff would have faced significant hurdles in proving his case. Litigation of the claims alleged in this case were expected to raise a number of complex questions that require substantial efforts by Lead Plaintiff and Lead Counsel. Lead Plaintiff would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants, including, *inter alia*, moving for class certification, obtaining full discovery, and surviving a motion for summary judgment. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012) (finding the inherent risks and processes involved in a drawn-out litigation to weigh in favor of settlement, even though plaintiffs maintained that their case was strong); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (determining that when Defendants would likely oppose class certification, this factor weighs in favor of settlement).

Even assuming that the sustained claims were certified for class treatment and survived a motion for summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts

– would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that a party would appeal. These considerations pose considerable expense to the parties and would delay potential recovery for years.

Lead Plaintiff and Lead Counsel are cognizant of the fact that assuming success on all issues of liability and damages would be imprudent. *See* Enright Decl., ¶14. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiff's case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (quoting *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 762 (E.D.N.Y.1984). Thus, the arguable possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir.1989); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716-17 (7th Cir. 2001) (affirming settlement over objection that "the settlement should have been larger" where the plaintiffs "would have had a headache trying to get any judgment on the merits"). If this Action was fully litigated, Settlement Class members might have received substantially less than the proposed Settlement, or, possibly, nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Lead Counsel, as a fiduciary to the Class, must always be mindful of that possibility in considering whether or not to recommending the acceptance of a settlement and so too should the Court in considering it approval.

That said, in negotiating the Settlement, Lead Plaintiff essentially assumed success on the merits, and focused on the Defendants' ability to pay any judgment. Defendants' financial resources are severely limited and there is no apparent prospect that additional resources would materialize between now and when a judgment might be obtained. In fact, Defendants' financial position has the potential of deteriorating. "Thus, without the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (finding settlement reasonable despite fact that settling defendants assets "do not come close" to the amount of liability alleged and noting that the main available source for funding the settlement would likely be consumed by the defense costs if litigation continued); *see, e.g., In re Priceline.com, Inc. Sec. Litig.,* No. 3:00CV1884AVC, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (finding proposed settlement amount reasonable, in part, given the available amount of insurance policies to fund settlement and the fact that current liabilities exceeded Priceline's current assets).

In the Settlement, Lead Plaintiff has achieved a significant and real recovery for the Class at an early stage of litigation. The proposed $250,000 settlement is within the range of approval in light of the significant risks that Lead Plaintiff and the Settlement Class would face in establishing liability and damages, and—most acutely—collecting any judgment.  Lead Plaintiff and Lead Counsel believe that this is a favorable outcome for the Class, as it secures an immediate benefit in light of the risks to proving liability, the absence of any insurance policies to pay for any larger settlement amount or judgment that may be achieved in the litigation, the current financial position of Defendants, and the costs and difficulties in litigating this case and leveraging any resulting judgment. Enright Decl., ¶16. Notably, the litigation could go on for years with no improvement

of Defendants' financial position while at the same time depleting any available funds that could be used to compensate investors. Even if a judgment was to be ultimately achieved, enforcement and collection of any judgment would likely be impossible. In contrast, the Settlement provides for an immediate and guaranteed recovery for the Settlement Class. Thus, even if Defendants could "arguably could pay more, pushing for more in the face of risks and delay would not be in the interests of the class." *In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829 (KSH/MF), 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009).

### 2.    The Claims Processing and Distribution Process is Effective

This action, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator -- Strategic Claims Services. The claims administrator will employ the simple and well-established methodology for the processing of claims in a securities class action such as in this Action. Namely, potential class members will submit the Court-approved Proof of Claim form that provides simple and specific instructions to potential Class members concerning the necessary information they must present to the Claims Administrator in order it to accurately process their claim and the deadlines by which they must do such.   Based on the information provided by the Class members, the Claims Administrator will confirm each Class member's eligibility to participate in the recovery by mechanically calculating their respective "Recognized Loss" based on the Plan of Allocation, and ultimately determine each Class member's *pro rata* portion of the Net Settlement Fund. *See* Stipulation, ¶¶17-23.

After receiving final approval of the Settlement, the passing of all applicable deadlines, and Court approval to begin the distribution process, the Authorized Claimants will be issued their checks based on the Claims Administrators' tabulations of the respective portions of the Net Settlement Fund. If after the initial distribution additional funds reside in the Net Settlement Fund

and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of the remaining funds (less the estimated expenses for the additional distribution). Additional distributions will proceed in the same manner until it is no longer feasible or economical to conduct further distributions. In such an event, the remainder of the Net Settlement Fund will be issued to a Court-approved non-sectarian, §501(c)(3) non-profit organization as a *cy pres* recipient. *See* Stipulation, ¶7.

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel and is in line with other settlements approved by courts in this District. As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and expenses. The Settlement does not contemplate any specific award to Plaintiffs' Counsel but limits any motion for attorneys' fees to no more than 33% of the Settlement Fund.  Plaintiffs' Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.

In keeping with the terms of the Settlement, Lead Counsel will seek attorneys' fees amounting to no more than 33% of the Settlement Fund, an amount that is within the percentages that courts in the Second Circuit routinely approve in securities class actions. *See, e.g., City of Providence v. Aeropostale, Inc.,* No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement). Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, in an amount not to exceed $20,000, and may request reimbursement of litigation expenses for Lead Plaintiff up to $5,000 for time and expenses (including lost wages) he incurred in representing the Class and

expenses directly related to his representation of the Settlement Class.  Pursuant to the Stipulation, the awarded fees and expenses will not be dispersed to the Plaintiffs' Counsel until the Court finally approves the Settlement. These facts further support preliminarily approving the Settlement

Moreover, there are no agreements between Lead Plaintiff and Lead Counsel, on the one hand, and Defendant or Defendants' Counsel, on the other hand, except for those agreements detailed in the Stipulation. Enright Decl., ¶22. Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement in connection with the proposed Settlement. Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement in connection with the proposed Settlement. This fact further supports that preliminary approval is appropriate here.

### E.    Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to a Plan of Allocation approved by the Court.[2]

The proposed Settlement fairly and reasonably allocates benefits amongst the Class Members. All Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  *See* Notice, 13. *See, e.g., In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008)

---

[2] Plaintiffs seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of Plaintiffs' costs and expenses is explicitly contemplated by the PSLRA in addition to receiving their *pro rata* portion of the recovery).   Thus, this factor also weighs in support of granting preliminary approval of the Settlement.

("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In granting preliminary approval, Lead Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties is "all persons who purchased or otherwise acquired the securities of ATBCOIN between June 12, 2017, and September 15, 2017, inclusive [and were damaged thereby].[3] *See* Stipulation, ¶1.

The Second Circuit has long acknowledged the propriety of certifying settlement classes. *See, e.g., Weinberger v. Kendrick,* 698 F.2d 61, 72-73 (2d Cir. 1982) ("The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies." (citation omitted)). "Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (citation omitted). As demonstrated below, the proposed Settlement Class satisfies Rule 23(a) and 23(b)(3).

---

[3] Excluded from the Settlement Class are: (i) all Defendants; (ii) all current or former officers, directors or partners of ATB, its affiliates, parents or subsidiaries; any corporation, trust or other entity in which any Defendant has or had a controlling interest; (iii) the members of the immediate families of the Individual Defendants; (iv) the parents, subsidiaries and affiliates of ATB; (v) the legal representatives, heirs, successors, or assigns of any excluded Person; and (vi) any Person who timely and validly seeks exclusion from the Class in accordance with the requirements of the Notice.

### A. The Settlement Class Meets the Requirements of Rule 23(a)

Pursuant to Rule 23(a), Lead Plaintiff must demonstrate: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). The Settlement Class satisfies these requirements.

#### 1. Rule 23(a): Numerosity

Numerosity is presumed when a class includes 40 or more members. *See Consol. Rail* Corp. *v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995); *accord In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Courts do not need a "precise quantification" to find numerosity, rather "reasonabl[e] estimate [of] the number of class members" for which "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'" *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006). Consequently, "[i]n securities fraud class actions . . . the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.,* 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class satisfies numerosity as it likely consists of thousands of investors. From June 12, 2017 until September 15, 2017, ATB allegedly raised millions of dollars in investments. *See* Plaintiffs' Complaint, ¶2. There are likely thousands of class members who purchased ATB tokens, making joinder impracticable. Therefore, Rule 23(a)(1) is satisfied.

#### 2. Rule 23(a)(2): Questions of Law or Fact Are Common

"[C]ommonality requires that 'there are questions of law or fact common to the class. . . .' Not every 'issue must be identical as to each [class] member, but . . . plaintiff [must] identify some unifying thread . . . .'" *In re Vivendi Univ., S.A. Sec. Litig.,* 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

Here, the allegations present several questions of law and fact common to all members of the Settlement Class, including: a) whether Defendant's alleged conduct violated the federal securities laws; b) whether ATBCOIN qualifies as a security under the *Howey* test; c) whether Defendants sold unregistered securities; d) whether Defendants Ng and Hoover acted as control persons of ATB; and e) whether the members of the Settlement Class sustained damages as a result of the conduct complained of, and, if so, the proper measure of damages. Courts in this district have routinely found that the above types of common questions satisfy Rule 23(a)(2). *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015). The commonality requirement is thus met.

### 3. Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

The requirement of Rule 23(a)(3) that the claims of the class representatives be "typical" of the claims of the class is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Typical" does not mean "identical." *In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 civ 8144, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.*; *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

The exact same conduct by Defendants injured the Lead Plaintiff and the other class members. The exact same legal theories apply equally to both. Essentially, Lead Plaintiff alleges

that he and the entire Class were damaged because Defendants unlawfully offered unregistered securities in the form of ATBCOIN during the class period. Accordingly, Lead Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions," satisfying the typicality requirement. *Veeco*, 235 F.R.D. at 238 (citation omitted); *see also*, *e.g.*, *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality where all class members were harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock"). Thus, typicality has been established.

### 4.    Rule 23(a)(4): The Lead Plaintiff is Adequate

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider: (i) whether the interests of the proposed class representatives are antagonistic to those of other class members; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ8331, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

First, no antagonism of interests exists between Lead Plaintiff and the proposed Settlement Class. All Settlement Class Members, including Lead Plaintiff, acquired ATBCOIN securities during the Class Period. Thus, the claims of the Settlement Class would prevail or fail in unison, and the common objective of maximizing recovery aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See*, *e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *Drexel*, 960 F.2d at 291)).

Second, Lead Plaintiff has retained qualified counsel. Lead Counsel is amply qualified and experienced and has conducted the Action effectively on behalf of Lead Plaintiff and the Settlement Class. Lead Counsel is an experienced law firm in representing plaintiffs in securities class actions in courts throughout the nation. *See* Enright Decl., Ex. C (firm resume of Lead Counsel). Accordingly, Rule 23(a)(4) is satisfied.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard.

**1.      Common Legal and Factual Questions Predominate**

Rule 23(b)(3) does not require "an absence of individual issues," but instead that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. The Supreme Court has stated that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods,. Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged unlawful offering of securities affected all Settlement Class Members in the same manner (*i.e.*, losses due to investment in ATBCOIN and ATBCOIN's devaluation). Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is

a common question for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* 568 U.S. 455, 467 (2013). Therefore, Plaintiff satisfies the first prong of Rule 23(b)(3).

## 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).

Each of the applicable factors supports certification. With respect to the first two factors, there is no evidence that numerous putative class members desire to bring separate individual actions under the federal securities laws. With respect to the third factor, several facts make it desirable to concentrate the claims in this Court, including that: i) ATBCOIN operated its activities in New York; and ii) this Court is already familiar with the factual and legal issues in the case.

Indeed, Lead Counsel is not aware of any individual class member interested in bringing its own action against Defendants for securities fraud. Enright Decl., ¶25. Finally, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.   THE PROPOSED CLASS IS ASCERTAINABLE AND THE NOTICE PROGRAM SHOULD BE APPROVED

### A.   The Proposed Class is Ascertainable

The Second Circuit has recognized an "implied requirement of ascertainability" in certifying a class action. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (additionally noting that a class definition should contain "time or context" limitations); *see In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017) ("[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries."); *Id*. at 265 ("[W]e decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage."). "The standard for ascertainability is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Stinson v. City of New York*, 282 F.R.D. 360, 374 (S.D.N.Y.2012).

The Second Circuit has further determined that where class members can be identified through investor records, and the records of defendants, that suffices to qualify a class as properly ascertainable. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 312 F.R.D. 332, 353 (S.D.N.Y. 2015) (finding a class ascertainable by reference to investor records, and defendant's own books and records). *In re Bank of Am. Corp. Sec, Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 140 (S.D.N.Y.2012) ("[W]hether a potential class member purchased [Defendant's] shares in the offering and held those shares until the corrective disclosure can be determined via objective criteria. Thus, members of the class are ascertainable."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 533 (S.D.N.Y. 2018) (concluding that defining class members based on the timing of their trades to satisfy the "modest" ascertainability requirement); *Petrobras,* 862 F.3d 250 at 269 (finding that the criteria used to define the class—securities purchases identified by subject matter, timing, and location—to be objective and definite as it was "*possibl*e" to ascertain the class as defined).

21

Here, the class is ascertainable. The class is clearly and narrowly defined and stipulated to by both parties, and is limited to specific dates and times. Like securities class actions before it, class members can be identified through investor trading records and the books and records of Defendants. In addition, class members are identifiable through records from virtual currency exchanges.

Specifically, using their own investment records, claimants can submit their proof of investment in the ATB ICO through receipts of purchase, such as email confirmations, cryptocurrency wallet records, or the like.  For example, Plaintiff Balestra provided Lead Counsel with ATBCOIN purchase records that this Court used to appoint Balestra as Lead Plaintiff, which indicated that on August 21, 2017, Lead Plaintiff invested 2.100441 Ethereum and received 388.5 ATBCOINS. *See* Motion to Appoint Raymond Balestra to Serve as Lead Plaintiff, Ex. 1. [ECF No.  24]; Balestra Decl., ¶11. These records can be cross-referenced against the relevant blockchains (containing unbroken ledgers detailing the nature of each transaction), ensuring complete accuracy in ascertaining the class.  *See, e.g.*, *Audet v. Fraser,* 332 F.R.D. 53, 70 (D. Conn. 2019) (certifying class of cryptocurrency investors and finding "the criteria for class membership in this case—purchases of designated products during a specified timeframe by all persons or entities except governmental agencies and those with certain relationships to a defendant—are clearly objective" and thus "easily clears" the "modest [ascertainability] threshold").

Accordingly, the class satisfies the ascertainability requirement of Rule 23.

## B.    The Proposed Notice is Appropriate and Should Be Approved

The proposed Notice and Summary Notice, attached as Exhibits A-1 and A-2 to the proposed Preliminary Approval Order, respectively, satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice

that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2). It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable to all Settlement Class Members; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing. The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F). Thus, the proposed Notice contains all of the information required by the PSLRA and "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 114).

Defendants have informed counsel for Plaintiffs that they are unlikely to have names, e-mails, or physical addresses for potential class members.  Thus, the Stipulation provides that, upon entry of the Preliminary Approval Order, the Claims Administrator and L&K shall cause the Summary Notice to be published on a national wire service and on L&K's firm website, and further published on coindesk.com[4] within twenty (20) calendar days after the entry of this Order. Stipulation, ¶9. A link to the Summary Notice shall further be posted on www.reddit.com/r/ATBcoin by L&K and/or the Claims Administrator.[5] Additionally, the Claims Administrator shall post on its website at www.strategicclaims.net/ATBcoin the Stipulation, Notice, and Proof of Claim form within twenty (20) days of the entry of the Preliminary Approval Order.

The manner of providing notice, *i.e.*, publication through a wire service, firm website, and the websites and forums for cryptocurrency trading represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *Vivendi* 242 F.R.D. 76, 107 ("when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process"); *Corpac v. Rubin & Rothman, Ltd. Liab. Co.*, 920 F. Supp. 2d 345, 349 (E.D.N.Y. 2013) ("when courts have  approved notice by publication, they have tended to do so where the notices either ran more than once or appeared in more than one publication"); *Ferrick v. Diable,* No. 18-1702, 2018 WL

---

[4]  CoinDesk is a self-described leader in blockchain news and media outlet that strives for the highest journalistic standards and abides by a strict set of editorial policies. CoinDesk maintains millions of viewers per month of those interested in cryptocurrency news. As ATBCOIN is a cryptocurrency, publication on CoinDesk is likely to reach potential Class members. *See* "About," CoinDesk, available at https://www.coindesk.com/about.

[5] Reddit is a multi-forum website which maintains millions of users per month. The subreddit reddit.com/r/ATBcoin is dedicated to the purchase, sale, and news surrounding ATB, and so publication on the subreddit is likely to reach potential Class members.

6431410 at *3 (2d Cir. Oct. 9, 2018) (finding notice provided, *inter alia*, publication, internet advertisements, social media outreach, a press release, and a settlement website to have satisfied Rule 23 and due process).

Lead Plaintiffs also request that the Court appoint Strategic Claims Services ("Strategic Claims") as the Claims Administrator to provide all notices approved by the Court to Class Members, to process Claim Forms, and to administer the Settlement. Strategic Claims is a nationally recognized notice and claims administration firm, successfully administering numerous complex securities class action settlements. Thus, the notice program should be approved

## IV.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events, and requests that the Court schedule the Settlement Hearing 120 days from the notice mailing date:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "Notice Date") | *No later than 31 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 10 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than (7) calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Seven (7) calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 120 from the date of the Notice Date.* |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order in its entirety.

DATED: April 10, 2020                    Respectfully,

**LEVI & KORSINSKY, LLP**

<u>/s/ Adam M. Apton</u>

Donald J. Enright
Elizabeth K. Tripodi
Adam A. Apton
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (212) 363-7171

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins, Esq.
Sebastian Tornatore, Esq.
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171

*Attorneys for Lead Plaintiff and the Class*