UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATBCOIN LLC, EDWARD NG, and HERBERT W. HOOVER,<br><br>Defendants. | C.A. No.   1:17cv10001<br><br>Hon. Vernon S. Broderick<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
<u>TO ENFORCE THE CLASS ACTION SETTLEMENT</u>**

Raymond Balestra ("Balestra" or "Lead Plaintiff"), on behalf of himself and the proposed settlement class, submits this memorandum of law in support of the accompanying Motion (the "Motion") to enforce the settlement reached in the above-captioned litigation (the "Action"). On April 6, 2020, ATBCOIN, LLC ("ATB"), Edward Ng ("Ng"), and Herbert W. Hoover ("Hoover" and together with ATB and Ng, "Defendants") and Lead Plaintiff (together with Defendants, the "Parties") entered into the Stipulation and Agreement of Settlement (the "Stipulation," filed as Exhibit 1 to the Declaration of Donald J. Enright (the "Enright Decl.") (ECF No. 66, 66-1)), a binding agreement submitted to this Court on April 10, 2020 to resolve the Action. For the purposes of this memorandum, any terms not defined shall have the same meanings as set forth in the Stipulation.

## PRELIMINARY STATEMENT AND PROCEDRUAL HISTORY

On December 21, 2017, Raymond Balestra filed a Class Action Complaint for Violation of the Federal Securities Laws, captioned *Balestra v. ATBCOIN LLC, et. al.,* Case No. 1:17-cv-10001 in the United States District Court for the Southern District of New York, asserting claims under Sections 12(a)(1) and 15(a), 15 U.S.C. §§77l(a)(1) and 77o(a) of the Securities Act of 1933 (the "Securities Act") against ATB, Ng, and Hoover (the "Complaint). [ECF No. 1].

On March 12, Plaintiffs moved to appoint Balestra as Lead Plaintiff and Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel. [ECF No. 22]. On March 27, 2018, Defendants filed a notice of non-opposition to the appointment of Balestra as Lead Plaintiff. [ECF No. 26]. On April 13, 2018, Defendants filed their motion to dismiss. [ECF No. 27]. On March 31, 2019, this Court granted Plaintiffs' motion to appoint Balestra as Lead Plaintiff, and denied Defendants' Motion to Dismiss. [ECF No. 42]. On April 6, 2019, Defendants filed their formal answer to Plaintiffs' complaint. [ECF No. 45].

On December 11, 2019, this Court issued an order governing the procedures to govern the handling of confidential discovery material. [ECF No. 56].

As noted in the Stipulation itself, the Stipulation was the result of years of investigation into the Parties' respective claims and defenses from December 21, 2017 through October 24, 2019, as well as over six months of negotiations. *See* Stipulation, ¶ E, H; *see also* Declaration of Donald J. Enright In Support of Lead Plaintiff's Unopposed Motion For Preliminary Approval of Proposed Class Action Settlement (the "Enright Declaration" or "Enright Decl.") ¶ 11-15. Specifically, after Plaintiffs' motion to appoint Balestra as Lead Plaintiff and Levi & Korsinsky as Lead Counsel was granted, and after Defendants' motion to dismiss was denied in its entirety (ECF No. 42) on March 31, 2019, investigations and subsequent arms'-length negotiations directly attuned to settlement took place until October 23, 2019, when the Parties achieved an agreement in principle to settle. *See* Enright Decl. ¶ 13.

Following October 23, 2019's agreement in principle, the Parties began pointed discussions aimed at achieving settlement. As part of these settlement discussions, Defendants provided Lead Plaintiff and Lead Counsel with all documents relevant to settlement of this Action (the "Confirmatory Discovery"). After detailed review of the Confirmatory Discovery, as well as after numerous discussions with Defense Counsel, Lead Plaintiffs deduced that Defendants would essentially be judgment proof. *See* Enright Decl. ¶ 14. Specifically, Defendants' limited financial position was only growing more limited, and so settlement would need to be effectuated as swiftly as possible to obtain recovery for the Class. *Id.* at ¶ 18. Thus, to formalize the agreement in principle, the Parties subsequently negotiated and entered into the Stipulation. The Stipulation releases all claims asserted against Defendants in the Action in return for a cash payment by

Defendants in the amount of $250,000 into the Settlement Fund for the benefit of the Settlement Class. *Id.* at ¶ 15. The Stipulation was filed with this Court on April 10, 2020. [ECF No. 66-1].

The Stipulation was thus a binding contract, the terms of which state that the only method of terminating the settlement would be:

> Lead Plaintiff and the Defendants, through their respective counsel, shall, in each of their separate discretions, have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of the date on which: (a) the Court files an order declining to enter the Order for Notice and Hearing in any material respect; (b) the Court files an order refusing to approve this Stipulation or any material part of it; (c) the Court files an order declining to enter the Final Judgment in any material respect; (d) the Final Judgment is modified or reversed by a court of appeal or any higher court in any material respect; or (e) an Alternative Judgment is modified or reversed by a court of appeal or any higher court in any material respect.

*See* Stipulation ¶ 28.

Nevertheless, on May 12, 2020—only just over a month after filing the Stipulation—Counsel for Defendants filed a letter (i) stating that "due to a change in circumstances, Defendants will not be able to fund the settlement," and (ii) asking for leave to file a motion to withdraw as counsel for Defendants (the "Letter"). [ECF No. 69].

The Letter does not expressly move to terminate the Settlement. ***In fact, per the Stipulation itself, this Motion cannot be opposed by the Defendants***. *See* Stipulation ¶ 48 ("Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Order for Notice and Hearing, of the Stipulation, and of the Settlement, and in consummating the Settlement in accordance with its terms, and further agree to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement."). However, out of an abundance of caution, Lead Plaintiff is moving this Court

to ensure that, as per the terms of the Stipulation, the Settlement is enforced against the Defendants in this Action.

## ARGUMENT

**I.     The Applicable Law Governing The Stipulation Is New York Contract Law**

In the Second Circuit, "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 728 (S.D.N.Y. 2018) (citing *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004)); *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (same); *Febus v. Guardian First Funding Grp., LLC,* 90 F. Supp. 3d 240, 245 (S.D.N.Y. 2015) ("A settlement, once reached, is a binding contract, which is interpreted according to the principles of contract law." (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443-44 (2d Cir. 2005)).

In regards to the operative law governing contract formation of the Stipulation, the Stipulation states clearly that: "The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the state of New York, without regard to conflicts of laws, except to the extent that federal law requires that federal law governs." *See* Stipulation, ¶ 39, 45, 52. Thus, New York law applies. *See id* at 728-29. ("Here, the Settlement . . . Agreement states that it is "governed by New York Law." Moreover, the parties' briefs assume that New York law applies. [internal citations omitted]. Thus, we will apply New York law.") (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton,* 888 F.2d 239, 242 (2d Cir. 1989)))).

"Under New York law, written agreements are construed in accordance with the parties' intent and '[t]he best evidence of what parties to a written agreement intend is what they say in

their writing.'" *Id.* at 729 (citing *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436, 986 N.E.2d 430, 963 N.Y.S.2d 613 (2013) (quoting *Greenfield v. Phillies Records*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002))). "Accordingly, "when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms."" *Id.* (citing *S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.,* 4 N.Y.3d 272, 277, 826 N.E.2d 806, 793 N.Y.S.2d 835 (2005)). Lead Counsel maintains that the Stipulation and the intent of the Stipulation are unambiguous as to the rights of termination and the settlement amount agreed upon and relevant releases provided in consideration, and so the Stipulation should be enforced purely according to its terms. See *Brad H. v. City of N.Y.*, 2011 NY Slip Op 5543, ¶ 4, 17 N.Y.3d 180, 186, 928 N.Y.S.2d 221, 224, 951 N.E.2d 743, 746 ("[a]mbiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation." (citing Evans v Famous Music Corp., 1 NY3d 452, 458, 807 NE2d 869, 775 NYS2d 757 [2004]; *Nissho Iwai Europe v Korea First Bank*, 99 NY2d 115, 121-122, 782 NE2d 55, 752 NYS2d 259 [2002]); *see also Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 29 N.Y.3d 313, 331, 57 N.Y.S.3d 85, 79 N.E.3d 477 (2017) ("Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation.").

**II.     The Stipulation Of Settlement Agreement In This Action Is Enforceable**

Regarding enforceability of the Stipulation, "Settlement agreements receive a 'presumption in favor of enforcement' and will not be disturbed by a 'change of heart' of one of the parties." See *Febus* 90 F. Supp. 3d 240 at 245 (citing *Renaissance Search Partners v. Renaissance Ltd.*, LLC, No. 12-Cv-5638, 2013 WL 6839039, *2-3 (S.D.N.Y. Oct. 15, 2013); *Elliott v. City of New York*, 11 Civ. 7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5,

2012); accord *U.S. v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."); *see also Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997), *aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."); *see also Renaissance*, 2013 U.S. Dist. LEXIS 175397, 2013 WL 6839039 at *7 ("A presumption in favor of enforcement reflects the value that courts place on negotiated settlement agreements.").

The Court's power to enforce the settlement agreement is particularly clear "where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Omega,* 432 F.3d 437 at 433. What's more, in the Second Circuit, "settlement agreements" include even preliminary agreements. *See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,* 04 CIV. 1621 (KMW)(A, 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005) (citing *Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)).

In this case, Defendants have stated only that they are unable to fund the Settlement. *See* Letter. Therefore, the terms of the Stipulation should continue to be enforced as previously agreed. *See Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 349-53 (S.D.N.Y. 2007) ("[a] stipulation of settlement made in open court is binding and enforceable" and . . . . the district court has the power to enforce a settlement agreement . . . A settlement stated on the record is "one of the strongest and most binding agreements in the field of law" and is thus entitled to substantial deference."); *see also Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 247 (E.D.N.Y. 2002) ("[C]ourts will presume that an attorney who enters into a settlement agreement has authority to do so.").

Moreover, the Defendants specifically represented in the Stipulation that they would be able to fund the settlement and would not be insolvent at the time of paying the Settlement Amount. *See* Stipulation, ¶ 33 ("Defendants represent, based on current knowledge, information and belief, that at the time Defendants will make payment or cause payment to be made pursuant to ¶3 above, Defendants will not be insolvent, nor will such payment render Defendants insolvent."). This flatly contradicts the representations in the Letter, which offers no further details as to Defendants' sudden inability to pay beyond "a change in circumstances." Without further detail as to Defendants' purported inability to fund the Settlement, Lead Plaintiff is utterly unable to determine if and when Defendants became insolvent, and whether Defendants fraudulently entered into the Stipulation in the first place. *See Febus* 90 F. Supp. 3d 240 at 246 ("It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.") (citing *Preston Frankford Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Butler Dining Servs., LLC*, 757 F. Supp. 2d 248, 252 (W.D.N.Y. 2010)).

In fact, nowhere in the Stipulation is it stated that the Settlement is contingent on Defendants' ability or lack thereof to fund it. Thus, Defendants' excuse that they are unable to fund the Settlement fails to meet the Settlement termination conditions outlined in the Stipulation. *See* Stipulation, ¶ 28; *Kaczmarczyk v. Acme Contracting LLC,* 06-CV-1005 CBA VVP, 2009 WL 3739442, at *8 (E.D.N.Y. Nov. 3, 2009) ("the existence of an enforceable agreement in this case was not contingent on the defendants' ability to obtain financing to make payments to the plaintiffs under the agreement . . . the defendants' reversal and refusal to recognize the validity of the settlement agreement seems to be occasioned by the sort of change of heart that does not serve to undo a binding agreement.") (reversed on other grounds by *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354 (2d Cir. 2011) (unpublished)). Accordingly, regardless of Defendants' sudden

unexplained purported inability to pay, the Stipulation of Settlement agreement should be enforced in full.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant Lead Plaintiff's Motion enforcing the Settlement between the parties per the terms set out in the Stipulation in full, pending this Court's approval of Lead Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement, and together with any other further relief this Court may deem just and proper.

DATED: June 16, 2020                                          /s/ Adam M. Apton

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
Adam M. Apton
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (212) 363-7171

*Attorneys for Lead Plaintiff and the Class*