UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
      :
RAYMOND BALESTRA, *individually and*  :
*on behalf of all others similarly situated*,  :
      :
                        Plaintiff,  :     17-cv-10001 (VSB)
      :
      - against -          :     **OPINION & ORDER**
      :
ATBCOIN LLC, EDWARD NG, and   :
HERBERT W. HOOVER,   :
                       Defendants.  :
      :
------------------------------------------------------------X

Appearances:

Donald J. Enright (Washington, DC)
Adam M. Apton (New York, NY)
Levi & Korsinsky, LLP

Christopher James Kupka (New York, NY)
Fields Kupka & Shukurov
*Counsel for Plaintiff*

Edward Ng
Herbert W. Hoover
*Pro Se Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Raymond Balestra ("Lead Plaintiff" or "Balestra") brought this putative class action against Defendants ATBCOIN LLC ("ATB"), Edward Ng ("Ng"), and Herbert W. Hoover ("Hoover," and together, "Defendants") for violations of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1) & 77o(a) of the Securities Act of 1933 (the "Securities Act"). Before me are (1) Lead Plaintiff's unopposed motion for (i) preliminary approval of a class settlement agreement, (ii) conditional certification of the proposed class, (iii) approval of the proposed

notice of the settlement, (iv) appointment of the claims administrator, and (v) approval of other procedures and deadlines; as well as (2) Lead Plaintiff's unopposed motion to enforce the settlement agreement.  For the reasons set forth below, Lead Plaintiff's motion for preliminary approval of the proposed class action settlement is GRANTED, and Lead Plaintiff's motion to enforce the settlement is DENIED without prejudice to renewal.

Defendants are ORDERED to inform the pro se office of their contact information and file a notice of appearance on the docket within seven days of the entry of this order.

## I.    Factual Background and Procedural History[1]

In this Opinion & Order ("O&O"), I presume familiarity with this action's factual background, and will only give a brief overview.  Defendants Hoover and Ng co-founded Defendant ATB, a cryptocurrency start-up that raised more than $20 million during the summer of 2017 as part of an initial coin offering ("ICO") for a cryptocurrency called "ATB Coins." (Doc. 1 ("Compl.") ¶¶ 2, 14–16.)  Lead Plaintiff Balestra bought 388.5 ATB Coins for $690.66. (*Id.* ¶ 13; *id.* Ex. 1.)  By March 11, 2018, the value of Lead Plaintiff's ATB Coins had decreased by more than 85 percent.  (*See* Doc. 23, at 5.)  Lead Plaintiff brought this putative class action against Defendants for violating § 12(a) of the Securities Act by offering and selling unregistered securities in the form of ATB Coins, and against Ng and Hoover for violating § 15(a) of the Securities Act as "control persons" of ATB.  (*See generally* Compl.)

On April 13, 2018, Defendants filed a motion to dismiss the action.  (Doc. 27.)  On March 31, 2019, I denied Defendants' motion to dismiss and granted Balestra's motion for appointment as Lead Plaintiff and for approval of his selection of Lead Counsel.  (Doc. 42

---

[1] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

("MTD O&O").)

On December 3, 2019, the parties reported that they had reached a tentative settlement agreement, (Doc. 52), and on February 27, 2020, the parties informed me that they were preparing a stipulation of settlement, (Doc. 58). On April 10, 2020, Lead Plaintiff filed an unopposed motion for preliminary approval of the settlement agreement, (Doc. 64), along with a memorandum of law in support, (Doc. 65 ("Pl.'s Prelimin. Approval Mem.")), a declaration from Lead Plaintiff's counsel with the settlement agreement attached as an exhibit, (Doc. 66-1 ("Settlement Agreement")), a declaration from Lead Plaintiff in support, (Doc. 67), and a proposed order, (Doc. 68). The agreement provided that Defendants would create a $250,000 settlement fund. (*See* Settlement Agreement ¶ 3.)

However, on May 12, 2020, Defendants' counsel filed a letter informing me that "[u]nfortunately, due [to] a change in circumstances, Defendants will not be able to fund the settlement." (Doc. 69 ("Caplan Letter")). Defendants' counsel further informed me that Defendant Hoover had terminated his services, and Defendant Ng had also advised him that he could not afford legal representation for himself or Defendant ATB. (*See id.*) As a result, Defendants' counsel sought leave to file a motion to withdraw as counsel. (*See id.*) In response, on June 16, 2020, Lead Plaintiff filed a "motion to enforce" the settlement agreement, (Doc. 70), along with a memorandum of law in support, (Doc. 71 ("Pl.'s Mot. to Enforce Mem.")), and a proposed order, (Doc. 72). Following a court conference on July 8, 2020, (*see* Doc. 73), Defendants' counsel filed a motion to withdraw, (Docs. 74–77).

On August 5, 2020, I held another court conference. (*See* Doc. 84 ("August 5, 2020 Tr.").) During the conference, Defendants' counsel represented that he would provide the email addresses for Hoover and Ng to Plaintiff's counsel and to me, (*see id.* 5:18-6:12), and

3

Defendants' counsel did so later that day.  After the conference, I issued an order granting Defendants' counsel's motion to withdraw.  (Doc. 80 ("August 7, 2020 Order").)  I further ordered Defendants to:

> file a letter on the docket on or before August 28, 2020: (1) indicating whether they intend to retain counsel; (2) opposing, if they so desire, the motion for preliminary approval of the settlement, (Doc. 64), and the motion to enforce the settlement, (Doc. 70); and (3) indicating whether they intend to remain in the settlement, abide by the terms of the settlement, and fund the settlement.

(August 7, 2020 Order.)  I also ordered Defendants "to inform the pro se office of their contact information and file a notice of appearance on the docket." (*Id.*)  I further advised Defendants that because ATB is a corporate entity, it could not appear in federal court without being represented by counsel.  (*See id.*)  Finally, I ordered Lead Plaintiff to file supplemental briefing addressing questions I had raised during the August 5, 2020 conference, (*see id.*), which Lead Plaintiff did, (Doc. 81 ("Pl.'s Suppl. Br.")).

Defendants never filed any letter on the docket addressing the questions in my August 7, 2020 order, and never informed the pro se office of their contact information or filed a notice of appearance on the docket.

## II.   Discussion

### A.  *Motion for Preliminary Approval of the Class Settlement*

For the reasons set forth below, I conditionally approve the Settlement Agreement. District courts have discretion to approve proposed class action settlements.  *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)).  The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.  *See Yuzary v.*

*HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing. *Silver v. 31 Great Jones Rest.*, No. 11 CV 7442(KMW)(DCF), 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013). "To grant preliminary approval, the court need only find that there is 'probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness.'" *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179–80 (S.D.N.Y. 2014) (quoting *In re Traffic Exec. Ass'n—E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted)). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). Preliminary approval is typically granted "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Silver*, 2013 WL 208918, at *1 (quoting *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005)).

I have reviewed the proposed Settlement Agreement, and I find that it is the result of arm's length negotiation between the parties, who were, at the time, both represented by experienced and sophisticated counsel. (*See, e.g.*, Pl.'s Prelimin. Approval Mem. 8.) Following my denial of Defendants' motion to dismiss on March 13, 2019, the parties engaged in months of counsel-to-counsel settlement discussions. (*See id.* 3–4.) The parties exchanged detailed mediation statements, (*see id.* at 8), and Defendants produced discovery related to settlement

considerations, (*see id.* at 4).  The parties reached an agreement in principle on October 23, 2019, (*see id.*), and then continued to negotiate the final terms of the Settlement Agreement, which was filed on April 10, 2020, (*see generally* Settlement Agreement; *see also id.* ¶ 35 ("The Parties agree that the amount to be paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily.")). The final agreement appears to be "the product of serious, informed, non-collusive negotiations." *Silver*, 2013 WL 208918, at *1.

I further find the proposed $250,000 settlement amount is within the range of approval considering the risks in proving liability.  Lead Plaintiff represents that in the absence of a settlement, Defendants could challenge the motion for class certification; instigate a costly and confusing "battle[] of the experts" and/or move for summary judgment on the grounds that Ng and Hover were not control persons of ATB, that ATB Coins were not securities, that the transactions were exempted under Section 4 of the Securities Act, and/or that the claims were barred by the Terms of Token Sale Agreement for ATB Coins.  (Pl.'s Suppl. Br. 2–3.)  In reviewing a proposed class action settlement, I must "balance[] the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation," and I do so here with the understanding that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014).

Casting a pall over Lead Plaintiff's motion is Defendants' apparent repudiation of the Settlement Agreement, based on Defendants' purported inability to pay.  (*See generally* Caplan Letter ("Defendants will not be able to fund the settlement.")).  Contrary to their later pronouncements, Defendants specifically represented in the Settlement Agreement that they had

6

the ability to fund the settlement.  (*See* Settlement Agreement ¶ 33 ("Defendants represent, based on current knowledge, information and belief, that at the time Defendants will make payment or cause payment to be made pursuant to ¶ 3 above, Defendants will not be insolvent, nor will such payment render Defendants insolvent.").)  That said, Defendants' financial situation is hardly a surprise:  Defendants' confirmatory discovery indicated to Lead Plaintiff that Defendants are "judgment-proof," (*see* Pl.'s Suppl. Br. 2 n.3), and Lead Plaintiff explained that in negotiating the Settlement, Lead Counsel determined that "securing any recovery, even if a judgment was obtained, appeared very likely to be difficult or impossible," and thus that "the Settlement provides the best reasonably conceivable recovery," (Pl.'s Prelimin. Approval Mem. 4; *see also id.* at 11–12.)  Indeed, I find that the low likelihood of recovery for the Class actually militates in favor of approval because effectuating the Settlement Agreement increases the chances of some recovery, however small.  *Cf. McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006) ("Where there is a risk that an insolvent defendant could not withstand a greater judgment, this factor will strongly favor settlement.").

Accordingly, I find that the Settlement Agreement is fair, reasonable, and adequate.

### B. *Conditional Certification of the Proposed Class*

In order to certify a class for settlement purposes, a court must find that the class satisfies all four requirements under Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the requirements listed under Fed. R. Civ. P. 23(b).

First, a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The exact number of proposed class members ("Settlement Class Members" or altogether, the "Settlement Class") remains opaque.  Lead Plaintiff represents that "Defendants did not possess an investor list as confirmed through discovery," and, as a result, Lead Plaintiff

7

relies on the "sheer size" of the ICO to conclude there are likely "thousands of investors who lost from the alleged fraudulent offering." (Pl.'s Suppl. Br. 1 n.1.) Regardless, an estimate of "thousands" of class members is sufficient to satisfy the numerosity requirement. *See In re Sadia Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (noting that numerosity is presumed at a level of 40 members) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, common questions include, but are not limited to: "whether [Defendants'] alleged conduct violated the federal securities laws;" whether ATB Coin "qualifies as a security;" "whether Defendants sold unregistered securities;" and "whether Defendants Ng and Hoover acted as control persons of ATB." (Pl.'s Prelimin. Approval Mem. 17.) "Proof of these issues does not vary from class member to class member." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018). The class satisfies the commonality requirement.

Third, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In securities actions, in particular, typicality is not demanding. So long as plaintiffs assert that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish the necessary typicality." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 80 (internal citation and quotation marks omitted). Where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," the typicality requirement is satisfied. *Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings*, Inc., 338 F.R.D. 205, 212 (S.D.N.Y. 2021) (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted)). (*See*

*also* MTD O&O 29 (finding that Balestra had "made a sufficient showing of typicality" at that "stage of the proceedings").)

Fourth, "the representative parties" must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs must meet two standards—that "class counsel . . . be qualified, experienced and generally able to conduct the litigation," and that "the class members . . . not have interests that are antagonistic to one another." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted). I have already found Balestra to be an adequate Lead Plaintiff and Levi & Korsinsky, LLP to be an adequate Lead Counsel, (*see* MTD O&O 28–30), and for the same reasons I previously articulated, the adequacy requirement is satisfied.

Finally, Lead Plaintiff argues that the Settlement Class meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a class must satisfy the "predominance" requirement, "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and the "superiority" requirement, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance requirement [under Rule 23(b)(3)] is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996); *see also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."

(citation omitted)). Here, "common questions of law and fact predominate over individual questions because Defendants' alleged unlawful offering of securities affected all Settlement Class Members in the same manner." (Pl.'s Prelimin. Approval Mem. 19.)

A proposed class meets Rule 23(b)(3)'s superiority requirement if "class adjudication . . . will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Silver*, 2013 WL 208918, at *2 (internal quotation marks omitted). Lead Counsel represents that there is no reason to believe that any individual class members wish to bring their own lawsuits, and that without a class-wide release, Defendants would have minimal incentive to settle. (*See* Pl.'s Prelimin. Approval Mem. 20.)

As such, I certify the Settlement Class for settlement purposes only. I also conditionally certify Lead Plaintiff as class representative and conditionally appoint Levi & Korsinsky, LLP as Lead Counsel for the Settlement Class.

### C. *Approval of Class Notice*

Rule 23(c)(2)(B) requires that notice of the class action be "the best notice that is practicable under the circumstances," and include seven particular pieces of information "in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The Private Securities Litigation Reform Act ("PSLRA") further requires that the notice include statements regarding, among other things, "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" the "potential outcome of the case," "attorneys' fees or costs sought," "identification of the lawyers' representatives," and "reasons for settlement." 15 U.S.C. § 78u-4(a)(7)(A)-(F). I conclude that the notice proposed by Plaintiff, (*see* Settlement Agreement Exh. A-1), satisfies all of the requirements under Rule 23(c)(2)(B) and the PSLRA. Since "Defendants have informed counsel

for Plaintiffs that they are unlikely to have names, e-mails, or physical addresses for potential class members," Lead Plaintiff intends to publish the notice on a national wire service, on Lead Counsel's firm website, on a leading blockchain news and media outlet called CoinDesk.com, and on a Reddit forum dedicated to ATB Coin. (Pl.'s Prelimin. Approval Mem. 24.) I conclude that the notification plan constitutes the best notice practicable under the circumstances, and meets the requirements of due process.[2]

### D. *Appointment of Claims Administrator*

In addition, I appoint Strategic Claims Services ("Strategic Claims") as the claims administrator. Strategic Claims is "an established and experienced claims administrator." (Pl.'s Prelimin. Approval Mem. 12.) Strategic Claims is accustomed to being approved by courts in this Circuit and District to provide notice of the settlement and claim processing services. *See, e.g.*, *Guyer v. MGT Cap. Invs., Inc.*, No. 18 CIV. 9228 (ER), 2019 WL 8403029, at *2 (S.D.N.Y. Dec. 17, 2019) (approving the appointment of Strategic Claims as the claims administrator); *In re Altair Nanotechnologies Sec. Litig.*, 14 CIV. 7828 (AT), 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (same). Accordingly, I appoint Strategic Claims as Claims Administrator.

### E. *Motion to Enforce*

In response to Defendants' counsel's assertion that Defendants cannot afford to pay the

---

[2] After Defendants' counsel represented that Defendants did not have the ability to fund the settlement, (*see generally* Caplan Letter), Lead Plaintiff proposed that dissemination of class notice be contingent on the funding of the settlement. (Pl.'s Suppl. Br. 1–2.) However, the Settlement Agreement clearly provides that the Claims Administrator must cause notice to be published "within twenty (20) calendar days" of the entry of my preliminary approval order. (Settlement Agreement ¶ 9.) In other words, under the terms of the Settlement Agreement, dissemination of the class notice is not contingent on funding of the settlement. The Settlement Agreement also provides that the agreement "may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto or their respective successors." (*Id.* ¶ 37.) However, Defendants' counsel has also "agree[d] to cooperate fully . . . in consummating the Settlement in accordance with its terms." (*Id.* ¶ 48.) Therefore, if Defendants in fact fail to abide by their contractual obligation to fund the settlement, Lead Plaintiff may seek appropriate relief, as discussed *infra* Section E, rather than preemptively withholding notice in violation of the Settlement Agreement.

settlement, (*see* Caplan Letter), Lead Plaintiff filed a "motion to enforce the class action settlement." Lead Plaintiff cites to New York and Second Circuit law to argue that the Settlement Agreement is a binding, enforceable contract. (Pl.'s Mot. to Enforce Mem. 5–9.) Lead Plaintiff argues that Defendants have not—and under the terms of the contract, cannot—oppose enforcement of the Settlement Agreement. (*Id.* at 4.) Lead Plaintiff asks me to "grant Lead Plaintiff's Motion enforcing the Settlement between the parties per the terms set out in the Stipulation in full." (*Id.* at 9.) Lead Plaintiff does not cite any specific federal rule of civil procedure under which he brings this motion.

Lead Plaintiff's arguments about the enforceability of the settlement agreement are well-taken, but procedurally inapposite. "[T]here is nothing in the Federal Rules of Civil Procedure styled a 'motion to enforce.' Nor is there approval for such a motion to be found in this Circuit's case law." *Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001). While it is true that I retain jurisdiction over the Settlement Agreement, (*see* Settlement Agreement ¶ 39), it is unclear what exactly Lead Plaintiff is asking me to do. The Second Circuit has said,

> There are, for example, many ways in which the performance of a class action settlement might be called into question before the district court: in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract (if the claim is that one or more parties are not living up to their obligations under the settlement stipulation); or in a motion for relief from judgment under Fed. R. Civ. P. 60(b) (if an amendment of the original judgment is being requested).

*Martens*, 273 F.3d at 172. Like the Second Circuit, I am "not suggesting which, if any, of these possibilities—or others—is the proper vehicle for the relief sought by" Lead Plaintiff. *Id.* However, Lead Plaintiff does need to "clarif[y] precisely what relief [i]s being requested and under what rule the motion [i]s noticed." *Id.* Therefore, I deny Lead Plaintiff's motion to enforce, but grant leave to renew.

12

### III.     Conclusion

For the foregoing reasons, Lead Plaintiff's motion for preliminary approval of the proposed class action settlement is GRANTED, and Lead Plaintiff's motion to enforce the settlement is DENIED without prejudice to renewal.  I hereby set the following settlement procedures:

(1) Within 31 business days of the date of this Order, the Claims Administrator shall mail the notice and claim form to Settlement Class Members.

(2) No later than 35 days before the fairness hearing, Lead Plaintiff shall file a motion for final approval of the Settlement Agreement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses.

(3) No later than 21 days before the fairness hearing, Settlement Class Members shall file any requests for exclusion or objections.

(4) No later than 7 calendar days before the fairness hearing, Defendants shall file any reply papers.

(5) No later than 7 calendar days before the fairness hearing, Settlement Class Members shall file any claim forms.

(6) The Court will hold a final fairness hearing on August 30, 2022 at 3:00 p.m. via telephone, using the dial-in 888-363-4749 and the access code 2682448.

(7) The parties shall abide by all terms of the Settlement Agreement.

Lead Plaintiff's counsel is FURTHER ORDERED to serve a copy of this order on Defendants Ng and Hoover by email to the addresses provided by Defendants' counsel on August 5, 2020, and to file an affidavit of such service within seven days of this order.

Defendants are FURTHER ORDERED to inform the pro se office of their contact

information and file a notice of appearance on the docket within seven days of this order.

The Clerk's Office is respectfully directed to terminate the open gavels at Docs. 64 and 70.

SO ORDERED.

Dated: March 29, 2022
      New York, New York

                                    Vernon S. Broderick
                                    United States District Judge