**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>         v.<br><br>ATBCOIN LLC, EDWARD NG, and HERBERT W. HOOVER,<br><br>                          Defendants. | Case No.: 1:17-cv-10001-VSB<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**I.      PRELIMINARY STATEMENT**

The Supreme Court and the Southern District of New York note that "'[c]ourts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("securities statutes seek to maintain public confidence in the marketplace . . . by deterring fraud, in part, through the availability of private securities fraud actions."). Securities fraud actions, such as this one, are particularly appropriate for class certification where, as alleged here, Defendants' fraudulent course of conduct continued throughout the Class Period,[1] damaging countless ATBCoin LLC ("ATB" or "ATBCoin") investors.

---

[1] The proposed class is defined as:

As shown below, this case meets all the requirements of Fed. R. Civ. P. 23(a) and (b)(3): (i) the class members are so numerous that joinder would be impracticable; (ii) there exist "questions of law or fact common to the class"; (iii) as proposed class representative, the claims and defenses of Raymond Balestra ("Lead Plaintiff" or "Balestra") are typical of those of the class; (iv) Lead Plaintiff is more than adequate to serve as a class representative; (v) common questions predominate over any individual questions; and (vi) the class action mechanism is the superior way to adjudicate the claims. Accordingly, this group of defrauded ATB investors is suitable for class treatment, with Lead Plaintiff serving as Class Representative and Levi & Korsinsky, LLP ("Levi & Korsinsky") serving as Class Counsel.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

On December 21, 2017, Raymond Balestra filed a Class Action Complaint for Violation of the Federal Securities Laws, captioned Balestra v. ATBCOIN LLC, et. al., Case No. 1:17-cv-10001 in the United States District Court for the Southern District of New York, asserting claims under Sections 12(a)(1) and 15(a), 15 U.S.C. §§77l(a)(1) and 77o(a) of the Securities Act of 1933 (the "Securities Act") against ATB, Ng, and Hoover (the "Complaint). [ECF No. 1].

On March 12, Plaintiffs moved to appoint Balestra as Lead Plaintiff and Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel. [ECF No. 22]. On March 27, 2018, Defendants filed

---

all persons who purchased or otherwise acquired the securities of ATBCoin directly from ATBCoin between June 12, 2017, and September 15, 2017, inclusive and were damaged thereby (the "Class"). Excluded from the Class are: (i) all Defendants; (ii) all current or former officers, directors or partners of ATB, its affiliates, parents or subsidiaries; any corporation, trust or other entity in which any Defendant has or had a controlling interest; (iii) the members of the immediate families of the Individual Defendants; (iv) the parents, subsidiaries and affiliates of ATB; (v) the legal representatives, heirs, successors, or assigns of any excluded Person; and (vi) any Person who timely and validly seeks exclusion from the Class in accordance with the requirements of the Notice.

a notice of non-opposition to the appointment of Balestra as Lead Plaintiff. [ECF No. 26]. On April 13, 2018, Defendants filed their motion to dismiss. [ECF No. 27]. On March 31, 2019, this Court granted Plaintiffs' motion to appoint Balestra as Lead Plaintiff, and denied Defendants' Motion to Dismiss. [ECF No. 42]. On April 6, 2019, Defendants filed their formal answer to Plaintiffs' complaint. [ECF No. 45].

On December 11, 2019, this Court issued an order governing the procedures to govern the handling of confidential discovery material. [ECF No. 56].

From December 21, 2017 through October 24, 2019, Lead Plaintiff, through counsel, diligently investigated the claims against the Defendants including analyzing publicly-filed documents and investigative reports, and publicly released statements concerning ATBCoin. . Enright Decl., at ¶3.[2]

After Plaintiffs' motion to appoint Balestra as Lead Plaintiff and Levi & Korsinsky as Lead Counsel was granted, and after Defendants' motion to dismiss was denied, Lead Counsel and Defendants' Counsel commenced a dialogue to discuss the procedural posture of this Action, forthcoming pleadings, and the Parties' initial positions concerning the merits and strength of the allegations and potential defenses. Enright Decl., at ¶4. During the months that followed counsel for the Parties continued to undertake meaningful discussions of their views of the merits, strength, and risks concerning this Action. *Id*.

Lead Counsel investigated the defenses that Defendants' Counsel discussed during its calls and also investigated Defendants' ability to fund any judgment or settlement. *Id*. at ¶5. From this

---

[2] The Declaration of Donald J. Enright In Support of Class Certification is referred to as "Enright. Decl."

3

research, Lead Counsel concluded that the immediate benefit of a cash recovery for the Class was in the Class's best interest. Foremost among these considerations was the risk that no recovery or a smaller recovery might be achieved following further litigation. In short, Plaintiff's investigation indicated that the named Defendants were likely to be essentially judgment-proof, and securing any recovery, even if a judgment was obtained, appeared likely to be very difficult. Moreover, even if the case advanced to trial, Balestra would face the risk of losing at trial and the risk that a Class might not be certified, as well as the risk of likely appeals which could last one or more additional years.

Thereafter, Defendants' Counsel and Lead Counsel explored the possibility of finding an amicable resolution of the Action. *Id*. at ¶6. During the weeks that followed, negotiations ensued between the Parties that resulted in an agreement in principle to resolve the claims against Defendants in this Action on October 23, 2019. *Id*.

On December 3, 2019, the parties reported that they had reached a tentative settlement agreement, (Doc. 52), and on February 27, 2020, the parties informed me that they were preparing a stipulation of settlement, (Doc. 58). On April 10, 2020, Lead Plaintiff filed an unopposed motion for preliminary approval of the Settlement Agreement, (Doc. 64), along with a memorandum of law in support, (Doc. 65 ("Pl.'s Prelimin. Approval Mem.")), a declaration from Lead Plaintiff's counsel with the Settlement Agreement attached as an exhibit, (Doc. 66-1 ("Settlement Agreement")), a declaration from Lead Plaintiff in support, (Doc. 67), and a proposed order, (Doc. 68). The agreement provided that Defendants would create a $250,000 settlement fund. (See Settlement Agreement ¶ 3.)

However, on May 12, 2020, Defendants' counsel filed a letter informing the Court that "[u]nfortunately, due [to] a change in circumstances, Defendants will not be able to fund the

settlement." Doc. 69 ("Caplan Letter"). Defendants' counsel further informed the Court that Defendant Hoover had terminated his services, and Defendant Ng had also advised him that he could not afford legal representation for himself or Defendant ATB. *See id*. As a result, Defendants' counsel sought leave to file a motion to withdraw as counsel. *See id*. In response, on June 16, 2020, Balestra filed a "motion to enforce" the settlement agreement, (Doc. 70), along with a memorandum of law in support, (Doc. 71 ("Pl.'s Mot. to Enforce Mem.")), and a proposed order, (Doc. 72). Following a court conference on July 8, 2020, (*see* Doc. 73), Defendants' counsel filed a motion to withdraw, (Docs. 74–77).

On March 29, 2022, the Court conditionally approved the Settlement Agreement, conditionally certified a Settlement Class for settlement purposes only, conditionally certified Balestra as class representative, and conditionally appointed Levi & Korsinsky, LLP as lead counsel for the Settlement Class. Doc. 86. However, consistent with their earlier statements reneging on the settlement, Defendants failed to pay the required moneys into the common fund that was provided for in the Settlement Agreement.  On May 23, 2022, Plaintiff notified the Court that Plaintiff was terminating the Settlement pursuant to the terms of the Settlement Agreement. Doc. 92.

After Plaintiff terminated the settlement, the Court directed Balestra to move for default judgment by June 21, 2022 or else face potential dismissal for failure to prosecute. However, on June 3, 2022, the Court rescinded the June 21 default judgment deadline and granted Balestra's request to allow Balestra until June 30, 2022 to move for class certification, so that Balestra may thereafter seek a default judgment for the class of injured investors.  Plaintiff's instant Motion for Class Certification (the "Motion") is being filed in satisfaction of the Court's June 3 directives.

## III.   THE PROPOSED CLASS

Balestra moves to certify the following class of ATB investors:

all persons who purchased or otherwise acquired the securities of ATBCOIN directly from ATBCOIN in its initial coin offering between June 12, 2017, and September 15, 2017, inclusive and were damaged thereby (the "Class"). Excluded from the Class are: (i) all Defendants; (ii) all current or former officers, directors or partners of ATB, its affiliates, parents or subsidiaries; any corporation, trust or other entity in which any Defendant has or had a controlling interest; (iii) the members of the immediate families of the Individual Defendants; (iv) the parents, subsidiaries and affiliates of ATB; (v) the legal representatives, heirs, successors, or assigns of any excluded Person; and (vi) any Person who timely and validly seeks exclusion from the Class in accordance with the requirements of the Notice.

Class members who do not have recoverable damages as a result of the alleged fraud would not be eligible to participate in any recovery.

## IV.   THE COURT SHOULD CERTIFY THE CLASS ACTION WITH BALESTRA AS CLASS REPRESENTATIVE AND LEVI & KORSINSKY AS CLASS COUNSEL

### A. The Standard on a Motion for Class Certification Favors Class Certification

The Supreme Court has recognized that private securities class actions are an important enforcement mechanism to supplement governmental regulation of the securities markets. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions

To be certified, a putative class must demonstrate that it satisfies Rule 23(a)'s numerosity, commonality, typicality and adequacy requirements and also meets the requirements of at least one of Rule 23(b)'s subsections. *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d

Cir. 2008).[3] In determining whether a class should be certified, the question is not whether plaintiffs will prevail on the merits, but rather whether the requirements of Rule 23 have been met. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) ("The question for the district court at the class certification stage is whether plaintiffs' . . . evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive.").

In *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), the Second Circuit addressed the standards applicable to class certification motions, instructing that a district judge must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." *Id*. The Second Circuit explained that the court's analysis cannot delve into merits issues completely unrelated to the requirements of Rule 23, but the district judge should be persuaded that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Id*. at 41. The Second Circuit cautioned that district courts must "avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation, [therefore] a district judge must be accorded considerable discretion to limit both discovery and the extent of the hearing on Rule 23

---

[3] Rule 23(a) provides: One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

requirements." *Id*. Because all of the requirements have been met, the Court should certify the proposed Class.

As discussed below, the requirements of Federal Rule 23 are readily satisfied here.

**B. Balestra's Claims Are Typical of the Class Under Rule 23(a)(3)**

The requirements of Rule 23(a)(3) that the claims of the class representatives be "typical" of the claims of the class is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Typical" does not mean "identical." *In re Marsh & McLennan Cos., Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.*; *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

The exact same conduct by Defendants injured the Balestra and the other class members. The exact same legal theories apply equally to both. Specifically, on August 21, 2017, Balestra invested 2.100441 Ethereum in the ATBCOIN initial coin offering, and received 388.5 ATBCOINS. *See* Motion to Appoint Raymond Balestra to Serve as Lead Plaintiff, Ex. 1. [ECF No. 24]; Balestra Decl., ¶11. Essentially, Balestra alleges that he and the entire Class were damaged because Defendants unlawfully offered unregistered securities in the form of ATBCOIN during the class period. Accordingly, Balestra "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they

initiating individualized actions," satisfying the typicality requirement. *Veeco*, 235 F.R.D. at 238 (citation omitted); *see also, e.g., In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality where all class members were harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock"). Thus, typicality has been established.

### C. Balestra Satisfies the Adequacy Requirement of Rule 23(a)(4)

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider: (i) whether the interests of the proposed class representatives are antagonistic to those of other class members; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

First, no antagonism of interests exists between Balestra and the proposed Class. All Class Members, including Balestra, acquired ATBCOIN securities directly from ATBCOIN in the initial coin offering during the Class Period. Thus, the claims of the Class would prevail or fail in unison, and the common objective of maximizing recovery aligns the interests of Balestra and all members of the Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *Drexel*, 960 F.2d at 291)).

Second, Balestra has retained qualified counsel. Lead Counsel is amply qualified and experienced and has conducted the Action effectively on behalf of Balestra and the Class. Lead Counsel is an experienced law firm in representing plaintiffs in securities class actions in courts

throughout the nation. *See* Enright Decl., Ex. A (firm resume of Lead Counsel). Accordingly, Rule 23(a)(4) is satisfied.

**D. The Requirements of Rule 23(b) Are Satisfied**

*1. Common Questions of Law and Fact Predominate*

Rule 23(b)(3) does not require "an absence of individual issues," but instead that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. The Supreme Court has stated that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods,. Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged unlawful offering of securities affected all Class Members in the same manner (*i.e.*, losses due to purchases of ATBCOIN's unregistered securities in the initial coin offering and ATBCOIN's subsequent devaluation). Therefore, Lead Plaintiff satisfies the first prong of Rule 23(b)(3).

*2. Damages May Be Calculated Using a Common Methodology*

For a class certified under Rule 23(b)(3) a plaintiff must show that "damages are capable of measurement on a classwide basis" and tie their damages model to their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Under Second Circuit law, *Comcast* "held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3)

must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Here, Class members' damages can be calculated using a common methodology, their out-of-pocket loss, that applies uniformly to all Class members. Defendants violated the Securities Act by offering and selling unregistered securities during the ATB ICO and Defendants touted, and Balestra and the Class reasonably expected, that the ATB Coins received in exchange for their investments would be worth more than the ETH, BTC, LTC, or other currencies invested.

### 3.  *Class Treatment is Superior to Other Methods of Adjudication*

Rule 23(b)(3) sets the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).

Each of the applicable factors supports certification. With respect to the first two factors, there is no evidence that numerous putative class members desire to bring separate individual actions under the federal securities laws. With respect to the third factor, several facts make it desirable to concentrate the claims in this Court, including that: i) ATBCOIN operated its activities in New York; and ii) this Court is already familiar with the factual and legal issues in the case.

Indeed, Lead Counsel is not aware of any individual class member interested in bringing its own action against Defendants for securities fraud. Enright Decl., ¶25. Certification of a class will allow Balestra to enforce any default judgment he obtains on behalf of the Class. *See e.g.,*

*Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334 (4th Cir. 2006) (reasoning that class members need to obtain class certification to have enforceable default judgment).

For all the foregoing reasons, Balestra respectfully requests that the Court certify the Class.

### E.  The Proposed Class Is Ascertainable

The Second Circuit has recognized an "implied requirement of ascertainability" in certifying a class action. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (additionally noting that a class definition should contain "time or context" limitations); *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017) ("[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries."); *Id.* at 265 ("[W]e decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage."). "The standard for ascertainability is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Stinson v. City of New York*, 282 F.R.D. 360, 374 (S.D.N.Y.2012).

The Second Circuit has further determined that where class members can be identified through investor records, that suffices to qualify a class as properly ascertainable. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015) (finding a class ascertainable by reference to investor records, and defendant's own books and records); *In re Bank of Am. Corp. Sec, Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 140 (S.D.N.Y. 2012) ("[W]hether a potential class member purchased [Defendant's] shares in the offering and held those shares until the corrective disclosure can be determined via objective criteria. Thus, members of the class are ascertainable."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 533 (S.D.N.Y. 2018) (concluding that defining class members based on the timing of their trades to satisfy the "modest" ascertainability requirement); *Petrobras*,

862 F.3d 250 at 269 (finding that the criteria used to define the class—securities purchases identified by subject matter, timing, and location—to be objective and definite as it was "possible" to ascertain the class as defined).

Here, the class is ascertainable. The class is clearly and narrowly defined, and is limited to specific dates and times. Like securities class actions before it, class members can be identified through the investors' own trading records. Specifically, using their own investment records, claimants can submit their proof of investment in the ATB ICO through transaction confirmations, such as email confirmations, cryptocurrency wallet records, or the like. For example, Plaintiff Balestra provided Lead Counsel with ATBCOIN purchase records that this Court used to appoint Balestra as Lead Plaintiff, which indicated that on August 21, 2017, Balestra invested 2.100441 Ethereum and received 388.5 ATBCOINS. *See* Motion to Appoint Raymond Balestra to Serve as Lead Plaintiff, Ex. 1. [ECF No. 24]; Balestra Decl., ¶11. If necessary, these records can be cross-referenced against the relevant blockchains (containing unbroken ledgers detailing the nature of each transaction). *See, e.g.*, *Audet v. Fraser,* 332 F.R.D. 53, 70 (D. Conn. 2019) (certifying class of cryptocurrency investors and finding "the criteria for class membership in this case—purchases of designated products during a specified timeframe by all persons or entities except governmental agencies and those with certain relationships to a defendant—are clearly objective" and thus "easily clears" the "modest [ascertainability] threshold").

Accordingly, the class satisfies the ascertainability requirement of Rule 23.

### F.  Levi & Korsinsky Should be Appointed Class Counsel

Balestra also respectfully requests that the Court appoint Levi & Korsinsky as Class Counsel. In appointing class counsel, the Court must take into account: (i) the work counsel has done; (ii) counsel's experience in handling *inter alia* class actions and the types of claims asserted;

(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Here, these considerations weigh heavily in favor of appointing Levi & Korsinsky as Class Counsel. The firm is among the most experienced securities class action firms in the nation and has prosecuted numerous successful securities class actions. *See* Enright Decl., Exhibit A. Under Balestra's supervision and direction, Levi & Korsinsky has already undertaken a vigorous prosecution of this case, including by, among other things: thoroughly analyzing, researching and investigating the securities law claims at issue; drafting a detailed Complaint; opposing Defendants' motions to dismiss; begun pursuing discovery from Defendants and negotiating a settlement that Defendants later defaulted on. Enright Decl. at ¶8. Finally, Levi & Korsinsky will commit the necessary resources to achieve a successful recovery for investors. *Id.* at ¶9.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Balestra respectfully requests entry of an order certifying this action as a class action pursuant to Federal Rule 23, appointing Balestra as Class Representative, and appointing Levi & Korsinsky as Class Counsel.

June 30, 2022                           Respectfully submitted,

                                        **LEVI & KORSINSKY, LLP**

                                        */s/ Donald J. Enright*

                                        Donald J. Enright (admitted *pro hac vice*)

                                        **LEVI & KORSINSKY, LLP**
                                        1101 30th Street, N.W., Suite 115
                                        Washington, DC 20007
                                        Telephone: (202) 524-4290
                                        Fax: (202) 333-2121
                                        denright@zlk.com

                                        *Attorney for Lead Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 11th, 2022, I electronically filed a true and correct copy of the foregoing document the Clerk of the Court using CM/EFC, along with all counsel so registered.

_Donald J. Enright_

Donald J. Enright